COMMONWEALTH *vs.* KENNETH NELSON
(and fourteen companion cases[1]).

No. 88-P-212.

Suffolk.   December 15, 1988. — January 23, 1989.

Present: GREANEY, C.J., ARMSTRONG, & WARNER, JJ.

*Practice, Criminal,* Disclosure of identity of informer, Stipulation.

An order dismissing indictments for the Commonwealth's refusal to disclose
the identity of a confidential informant who had supplied information
used by police in an affidavit in support of an application for a search
warrant was vacated and the matter remanded to the Superior Court for
consideration whether an evidentiary stipulation by the Commonwealth
would strike the proper balance between the public interest in upholding
the government's privilege not to disclose the identity of an informant
and the rights of the defendants to prepare their defense and to have a
fair trial. [797-800]

INDICTMENTS found and returned in the Superior Court Department on June 3, 1986.

A motion to dismiss was heard by *Elbert Tuttle,* J.

*Sharon B. Soffer,* Assistant District Attorney, for the Commonwealth.

*Brian F. Gilligan* for the defendants.

WARNER, J.  This is the Commonwealth's appeal from the dismissal before trial by a Superior Court judge of certain indictments charging the defendants with drug and firearm offenses. See Mass.R.Crim.P. 15(b)(1), 378 Mass. 883 (1979); G. L. c. 278, § 28E; *Commonwealth* v. *Friend,* 393 Mass. 310, 311-314 (1984). The dismissals were based on the Commonwealth's failure, on order of another Superior Court judge, to disclose the identity of an informant who had supplied infor-

---

[1] Four of the companion cases are against Nelson, five are against Charles Farrell and five are against Robert Cline.

mation used by the police in an affidavit in support of an application for a search warrant.

We draw the essentially undisputed facts from the transcripts of the hearings before the judges and the memoranda of decision of the first judge. A search warrant for an apartment in Mattapan issued from the Dorchester District Court on the basis of an affidavit which recited that a confidential informant had been in the apartment on a number of recent occasions and had seen one "Willie" (whose physical appearance the informant described) exchange cocaine for money with persons who came to the apartment door. The detective who made the affidavit said that his own surveillance revealed a number of people, some of whom he believed had been involved with drugs, enter and exit the building in which the apartment was located within a short period of time; the detective did not observe any occupant of the apartment.

On June 7, 1986, when the police entered the apartment to execute the search warrant they were confronted by the defendants Cline and Nelson with drawn handguns; the guns were dropped. While the police were in the apartment, the defendant Farrell, using a key, entered. Here, the testimony was conflicting. A police officer said that Farrell stated that he lived in the apartment, which was his sister's. Farrell testified that he told the police that he came only to pick up some belongings of his sister.[2] There was other inconsistent evidence regarding Farrell's residence. The search of the apartment turned up a handgun, drugs, drug paraphernalia, cash and the title and registration to an automobile in Farrell's name. No drug was found on the person of any defendant.

Thereafter, each defendant was indicted for unlawful possession of firearms, trafficking in cocaine and conspiracy to traffic in cocaine. In the conspiracy indictments, the three defendants were named as the coconspirators. In a bill of particulars, the Commonwealth identified the three defendants and "Willie" as joint venturers and coconspirators in the cocaine charges.

---

[2] Farrell said that his sister and her husband, Willie Thompson, and their two children had resided in the apartment until the couple separated in April of 1986.

The defendants moved to compel the Commonwealth to identify the confidential informant. The first judge, in a memorandum of decision, noted the uncertainty of the evidence with respect to Farrell's association with the apartment and the similarities in Farrell's physical appearance and that of "Willie," as described by the informant.[3] As to the defendants Cline and Nelson, the judge observed that they claimed to have been in California at the time the alleged drug transactions were observed by the informant and thus his identity was essential to their defense. The judge denied the motion, without prejudice, on the condition that the Commonwealth arrange for a photographic array containing pictures of the defendants to be presented to the informant; the purpose was to determine whether the informant would identify any of the defendants as "Willie." After this procedure, the judge said, the defendants could again move for disclosure if they could show compelling need.

The informant could not be located by the police, and the defendants again brought the question of disclosure before the first judge. In her second memorandum of decision, the judge noted that the defendants' concern that a jury might infer that Farrell was "Willie" had been ameliorated by the Commonwealth's willingness to stipulate to the contrary. She added, however, that the argument for disclosure had been enhanced by the inclusion of "Willie" as a coconspirator, as it would be necessary to defend against a charge involving an unknown person. The judge ordered the Commonwealth to disclose the identity of the informant within fourteen days.[4]

---

[3] The physical description of Willie Thompson (see note 2, *supra*), as reported by his wife (Farrell's sister), closely resembles that of "Willie," as reported by the informant.

[4] The judge mentioned an alternative of a nolle prosequi of the conspiracy indictment. We are not certain what was meant in this respect. "Willie" was an unindicted coconspirator with the three defendants. His name appeared only in the Commonwealth's bill of particulars. In any event, the Commonwealth took no action regarding the conspiracy indictments prior to the expiration of the time within which it was ordered to disclose the identity of the informant.

The Commonwealth failed to disclose the identity of the informant, and the defendants filed a motion to dismiss the indictments. After hearing before a second Superior Court judge, all indictments were ordered dismissed except those for firearms violations involving the handguns in the possession of Cline and Nelson when the police entered the apartment. The judge reasoned that the informant could provide relevant testimony that "Willie" was not one of the defendants and that evidence would tend to exonerate them on the question whether they had a possessory interest in the apartment or the drugs.[5]

On the basis of the somewhat confused and unfocused proceedings in the Superior Court, we must determine the correctness of the determination of the inapplicability of the government's privilege not to disclose the identity of an informant. The privilege "has long been recognized in this Commonwealth." *Commonwealth* v. *Douzanis*, 384 Mass. 434, 441 (1981). It "serves a substantial, worthwhile purpose in assisting the police in obtaining evidence of criminal activity." *Ibid.* The privilege is not absolute, however, and its application is governed by fundamental considerations of fairness. See *Roviaro* v. *United States*, 353 U.S. 53, 60 (1957); *Commonwealth* v. *Douzanis, supra.* "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action" (footnotes omitted). *Roviaro* v. *United States, supra* at 60-61. "The problem [of application of the privilege] is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders [ ]disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony,

---

[5] The Commonwealth's case on the merits of the cocaine charges would be based both on theories of joint venture and constructive possession.

and other relevant factors." *Id.* at 62. See *Commonwealth* v. *Swenson,* 368 Mass. 268, 277 (1975).[6]

The following outline of the Commonwealth's case and the defendants' defense surfaces from the limited record before us. The defendants were charged with conspiracy to traffic and trafficking in cocaine, the latter involving a theory of joint venture. They were also charged as joint venturers in the unlawful possession of a firearm. The cocaine and related incriminating evidence were found in a safe and the gun in a bedroom in the apartment. The case on any of the charges against Cline and Nelson will rest on their presence in the apartment with drawn guns when the police entered. The case against Farrell will depend on the method of his entry into the apartment and conflicting evidence of his association with it.[7] Thus, the cases against all of the defendants (however they are tried, see Mass.R.Crim.P. 9[e], 378 Mass. 861 [1979]) will require, in part, proof beyond a reasonable doubt that one or more of the defendants had constructive possession of the cocaine or the gun. The defendants argue that in this context the informant's identity would be relevant and helpful because the informant's testimony would establish that (1) none of the defendants is the "Willie" whom the informant observed in the apartment, and (2) none of the defendants was seen by the informant during his observations of cocaine dealing in the apartment. At the very least, the defendants contend, this evidence would help to create a reasonable doubt in the minds of a jury with respect to the question of constructive possession.

The Commonwealth counters that the force of the defendants' argument is lost because the Commonwealth had stipulated that the defendants "were not the guys there" — that none of the defendants is the "Willie" whom the informant

---

[6] For the different considerations and procedures in cases involving a claim that a search warrant affidavit contains intentional or reckless misstatements, see *Commonwealth* v. *Douzanis,* 384 Mass. 434 (1981), and *Commonwealth* v. *Abdelnour,* 11 Mass. App. Ct. 531, 534-537 (1981).

[7] There is suggestion in the record that others came to the apartment door and were questioned by the police and then allowed to leave. We know nothing further of the circumstances.

saw selling drugs from the apartment.[8] The Commonwealth's stipulation, however, does not go far enough. At the trial on any of the charges against the defendants, neither the affidavit nor any of the hearsay information in it could be introduced by the Commonwealth or by the defendants over objection. The Commonwealth's stipulation, even if reduced to writing and in clear terms that the informant did not observe any of the defendants in the apartment at the times "Willie" allegedly had been seen selling cocaine, would be probably confusing (perhaps dangerously so for the defendants, by introducing otherwise unexplained prior drug dealing from the apartment) to a jury which had no knowledge of the affidavit allegations as to the informant's observations.

We think consideration should be given to whether a proper balance between the public interest in upholding the government's privilege and the rights of the defendants to a fair trial would be struck by a more carefully crafted and expanded stipulation by the Commonwealth. Such a stipulation (if possible on the facts known to the Commonwealth) could state not only that none of the defendants is "Willie" or was present at the times of the informant's observations but also that the relation of those observations in the search warrant could be read to the jury or, in the discretion of the judge, a redacted version of the affidavit could be introduced in evidence. The defendants will not be heard to object to the affidavit portion of the stipulation, as this would provide part of the very information which they seek by revelation of the identity of the informant.

In applying the balancing test, the judge may also consider whether there would be any unfairness to the defendants in the failure to disclose the identity of the informant which may be related to the naming of "Willie" as an unindicted coconspirator in the bill of particulars. This question should be reviewed in

---

[8] On appeal, the defendants characterize the prosecutor's statements as "mere promises to stipulate." In any event, in these circumstances, the Commonwealth would be held to its promises. Cf. *Commonwealth* v. *Benton,* 356 Mass. 447, 448 (1969); *Commonwealth* v. *Spann,* 383 Mass. 142, 145 (1981).

light of any stipulation made by the Commonwealth and the suggestion (by the first judge, see note 4, *supra*, and, at oral argument, by the Commonwealth) that nolle prosequis of the conspiracy indictments would eliminate any potential unfairness.[9]

The order dismissing the indictments is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion. The Commonwealth has the burden of going forward. If it does not do so within sixty days of the issuance of the rescript from this court, the order of dismissal shall be reinstated.

*So ordered.*

---

[9] The question whether a defendant may be convicted of conspiracy with one who is unnamed is not presented in this appeal. But see *United States* v. *Fusaro*, 708 F.2d 17, 21 (1st Cir. 1983); Nolan & Henry, Criminal Law § 448, at 344 (1988); Model Penal Code § 503(2) (1962, published 1985); Torcia, Wharton's Criminal Law, § 733, at 553 & n.22 (14th ed. 1981).