COMMONWEALTH *vs.* RON P. WILKERSON.

Barnstable. January 10, 2002. - February 25, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Probable Cause. Arrest. Search and Seizure,* Arrest, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Registrar of Motor Vehicles,* Records.

On a criminal defendant's motion to suppress certain physical evidence on the ground that his arrest was constitutionally invalid because probable cause was based on what was later disclosed to be erroneous information provided to the arresting officer by the registry of motor vehicles about the status of the defendant's license, the motion was properly denied, where, since the arresting officer relied on records of an independent State agency rather than police records to make the otherwise proper arrest, there was no unlawful conduct to be deterred by exclusion of the evidence, and nothing to encourage the police to maintain current and accurate computer records. [139-143]

An issue whether Miranda warnings were necessary at the time of a criminal defendant's arrest was not present, where no contention as to the need for, and lack of, the warnings was raised at the hearing on the defendant's motion to suppress evidence or at trial, and where nothing was raised at the trial to require the judge to inquire sua sponte into the voluntariness of the defendant's postarrest statements. [143]

COMPLAINT received and sworn to in the Barnstable Division of the District Court Department on May 15, 2000.

A pretrial motion to suppress evidence was heard by *Joan E. Lynch,* J., and the case was tried before her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Harris Krinsky* for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the District Court convicted the defendant of possession of a firearm (a rifle) without a firearms identification card, G. L. c. 269, § 10G. The defendant argues

that his pretrial motion to suppress the rifle (seized from the trunk of the automobile he was driving after the arrest and the impoundment of the vehicle) should have been granted. He asserts that his arrest for operating the automobile after his license had been suspended was constitutionally invalid because, in making the arrest, the police officer relied on erroneous information furnished by the registry of motor vehicles (registry) regarding the status of the defendant's driver's license. The defendant also argues that his statements made to the police after his arrest should have been suppressed because he was not afforded the Miranda warnings. Finally, the defendant claims that the trial judge erred in not conducting a voir dire, sua sponte, to determine whether his postarrest statements were voluntary, before admitting them at trial. We transferred the defendant's appeal to this court on our own motion and now affirm the judgment of conviction.

The judge who heard the defendant's motion to suppress did not make findings of fact or conclusions of law. A remand is unnecessary because the parties do not dispute any facts essential to the decision of the suppression motion. We now summarize those facts and other relevant background.

On May 14, 2000, at approximately 8:10 P.M., Officer Jennifer A. Parkas of the Barnstable police department saw an automobile without its headlights on approaching her cruiser. Because it was dark out and the automobile was the only vehicle on the road without lights, Officer Parkas followed the automobile. She requested a check of the automobile's registration plate and learned that the driver's license of the automobile's owner had been revoked. She stopped the automobile and, on her request, the defendant produced his driver's license and the automobile's registration. As Officer Parkas was preparing a citation for the headlights violation, a computer check of registry records indicated that the defendant's license had been suspended for his failure to pay a fine in Florida.

By this time, several people had approached the defendant's automobile and were talking with him. One of the people identified herself to Officer Parkas as Diana Souza, the defendant's girl friend and the owner of the automobile. In part because of the number of people now present, and in part because of the

defendant's "fidgety, jumpy" behavior, Officer Parkas called for backup.

Sergeant Michael Damery of the Barnstable police department arrived at the scene. The defendant was placed under arrest for operating an automobile after the suspension of his license and placed in the back seat of Parkas's cruiser. Souza offered to drive her automobile away, but a further check confirmed that Souza's driver's license had been revoked and also revealed that there was an outstanding warrant for her arrest. Subsequently, Souza was placed under arrest for the outstanding warrant and her automobile was impounded.

Sergeant Damery and Officer Parkas then initiated an inventory search of the automobile. A strong odor of gasoline emanated from the automobile's trunk. Inside the trunk, Sergeant Damery discovered, in addition to several items of clothing and other miscellaneous items, an aerosol can of brake parts cleaner and, wrapped in some clothing, a rifle for which the defendant lacked a firearms identification card.

At the conclusion of the hearing on the motion to suppress, the defendant's counsel informed the motion judge that she had in her possession a "certified copy from the [registry] stating that [the defendant's] Massachusetts license had been reinstated as of March of 1997. His Florida license, the 'A' number license . . . utiliz[ed] to effect the arrest had expired. But he did have a valid Massachusetts license at the time." Counsel did not introduce this information in evidence. The prosecutor's response to this representation was simply that the police "ran the [defendant's] license [on the computer]. It came back as suspended." Thus, nothing was actually in evidence at the hearing on the motion to suppress that proved that the defendant had a valid license. It was not until the trial, some four months later, that the information furnished to Officer Parkas about the status of the defendant's right to operate was shown to be erroneous, and that the defendant, in fact, had been operating with a valid Massachusetts driver's license. Based on this discovery, the defendant's trial counsel, at the conclusion of the trial, attempted to have the motion to suppress reconsidered. That effort was denied by the trial judge.

1. We pass the muddled procedural state of the record

described above, to decide the issue raised by the motion to suppress: whether the defendant's arrest was constitutionally invalid because probable cause was based on what was later disclosed to be erroneous information, provided to Officer Parkas by the registry, about the status of the defendant's license.

(a) The defendant's contention that the arrest was invalid under the Fourth Amendment to the United States Constitution is foreclosed by the decision in *Arizona* v. *Evans*, 514 U.S. 1 (1995), in which the United States Supreme Court announced a categorical exception to the exclusionary rule for clerical errors of court employees. See *id.* at 16. Considering whether suppression was warranted of evidence seized pursuant to an arrest based on inaccurate information in a computer database, the Court reasoned that "court clerks are not adjuncts to the law enforcement team engaged in . . . ferreting out crime [and] have no stake in the outcome of particular criminal prosecutions" (citations omitted). *Id.* at 15. The Court found "no indication that the arresting officer was not acting objectively reasonably when he relied upon the police computer record." *Id.* at 16-17. The Court concluded that, because responsibility for the error lay with court employees and not with police, "the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." *Id.* at 14.

(b) Suppression on the facts of this case is also not required under art. 14 of the Declaration of Rights of the Massachusetts Constitution. Probable cause to arrest is not vitiated when the basis on which the police officer acted is shown after the fact to have been erroneous, because the existence of probable cause is determined "at the moment of arrest," not in light of subsequent events. *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). See *Commonwealth* v. *Ceria*, 13 Mass. App. Ct. 230, 234 (1982) (reasonable belief that moped was stolen sufficient to establish probable cause to arrest, even though belief was mistaken); 2 W.R. LaFave, Search and Seizure § 3.5(d), at 272 (3d ed. 1996) ("information sufficient to establish probable cause is not defeated by an after-the-fact showing that [the] information was false, any more than information insufficient to show probable cause can be found

adequate on the basis of an after-the-fact showing that in fact the conclusory allegations were correct"). The defendant maintains that the arrest should be held invalid because the police themselves were at fault for maintaining or creating incorrect information. When the matter is grounded in police fault, then policy reasons for applying the exclusionary rule become more relevant. Such was the situation in *Commonwealth v. Hecox*, 35 Mass. App. Ct. 277 (1993) (reversing defendant's conviction of trafficking in cocaine), where a police officer mistakenly believed that an arrest warrant for the defendant was outstanding, because either he "did not check with his communications office or he received incorrect data until the time he arrested the defendant." *Id.* at 281. Deciding the matter solely under Federal law, the Appeals Court held that, where police have "stale information or outmoded records that are demonstrably incorrect, the government has the burden of showing that it is not at fault in failing to update its records or to provide correct information." *Id.* at 284. Because the Commonwealth failed to meet this burden, the Appeals Court concluded that the defendant's motion to suppress evidence should have been allowed. See *id.* at 285. " '[P]olice may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected' or at fault in not informing themselves." *Id.* at 284, quoting 2 W.R. LaFave, Search and Seizure § 3.5(d), at 21-22 (2d ed. 1987). See *Commonwealth v. Censullo*, 40 Mass. App. Ct. 65, 69 (1996) (exclusionary rule mandates suppression of evidence on Federal constitutional grounds, when officer's ignorance of traffic logistics at intersection on patrol route resulted in defendant's arrest).

We need not pass in this case on the correctness vel non of the *Hecox* or *Censullo* decisions, where the incorrect information on which the arrest was based was chargeable to the police. Here, Officer Parkas and the Barnstable police were not at fault, and as a result, the usual rule applies that upholds an arrest on otherwise reliable information that is later shown to be erroneous. Vis-à-vis the local Barnstable police, the registry is an independent agency of State government. See G. L. c. 16, § 9. Pursuant to G. L. c. 90, § 30, the registry is charged with

keeping complete records on the status of drivers' licenses and with making its records available to the public and other State agencies. In this case, the registry was providing the Barnstable police with information pertaining to the registry's licensing and regulatory functions. See G. L. c. 90, § 8 (licensing of operators) and § 22 (suspension or revocation of drivers' licenses). Officer Parkas had no basis to question the information, or to verify it independently, and she could not have been expected to know that the information provided by the registry computer was inaccurate. It would make no sense to impute to her knowledge of the registry's mistake.

The interest in deterring unlawful police conduct, which is the foundation of the exclusionary rule, is not implicated where police rely on records of an independent State agency, such as the registry, to make an otherwise proper arrest. Because Officer Parkas did nothing wrong, there is no unlawful conduct for exclusion of the evidence to deter. As noted by the trial judge, and quoted approvingly by the United States Supreme Court in *Arizona* v. *Evans, supra*: "[T]he police officer [was] bound to arrest. [S]he [would have] been derelict in [her] duty if [s]he failed to arrest." *Id.* at 15. Moreover, because the mistaken information comes from an official source independent of law enforcement, suppression of the evidence would do nothing to encourage the police to maintain current and accurate computer records. See *United States* v. *Janis,* 428 U.S. 433, 454 (1976) (where "the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted").

Our conclusion is supported by cases from other jurisdictions that have examined this precise issue. See *State* v. *Ewoldt,* 448 N.W.2d 676, 678 (Iowa Ct. App. 1989) (officers could not know, or be reasonably expected to know, that information provided by department of public safety and transportation was inaccurate); *State* v. *Lanoue,* 156 Vt. 35, 38 (1991) (incorrect information provided by department of motor vehicles not chargeable to law enforcement agency). Cf. *Shadler* v. *State,* 761 So. 2d 279, 286 (Fla.), cert. denied, 531 U.S. 924 (2000) (department of highway safety integral component of Florida

law enforcement; operation of exclusionary rule will improve record-keeping efforts).[1]

2. After the rifle was seized from the trunk of the automobile, Officer Parkas spoke to the defendant, who stated that the weapon belonged to Souza's grandfather, that it had been in the automobile for months, and that the rifle was not his. The record does not disclose whether Miranda warnings were given before the defendant made his statements.

It is questionable whether Miranda warnings were necessary in the circumstances because it was the defendant who, in a state of agitation, demanded of Sergeant Damery that, "I need to speak with you." It was to this request of the defendant that Officer Parkas responded. In any event, the issue is not present because no contention as to the need for, and lack of, Miranda warnings was raised at the motion to suppress hearing or at trial. See *Commonwealth* v. *Barnes*, 399 Mass. 385, 393-394 (1987).

Similarly, nothing was raised at the trial to require the judge to inquire sua sponte into the voluntariness of the defendant's postarrest statements. See *Commonwealth* v. *Ferreira*, 417 Mass. 592, 600 (1994).

*Judgment affirmed.*

---

[1] The Commonwealth does not attempt to justify the search on the basis that the car was impounded because of the revocation of Souza's license and her subsequent arrest. The defendant no longer challenges the search on the basis that it was not in compliance with the standard operating policy of the Barnstable police department on inventory searches or on the basis that the police lacked authority to impound the vehicle or to conduct the search on the street.