Agnes, Peter W., J.
INTRODUCTION
The defendant, Danny Rosado, is charged with trafficking in cocaine. The Defendant filed a pretrial motion to suppress evidence seized pursuant to a search warrant and, in the alternative, for disclosure of the identity of a confidential informant because it is alleged to be exculpatory evidence. For purposes of this motion, the court relies exclusively on the facts set forth in the affidavit in support of the search warrant.
FINDINGS OF FACT
Detective Jeffrey Hart is a police officer employed by the City of Lawrence since 1995. On or about April 1, 2005, he received information from Detective Brian Burokas concerning the sale of cocaine and marijuana from a Hispanic male know as “Danny” at 15 Bodwell Street on the 1st floor basement. He received additional information concerning the sale of cocaine and marijuana throughout April and again on May 17, 2005. “Danny” lives on the 1st floor of 15 Bodwell Street with his wife or girlfriend and their children.
On or about May 18, 2005, Detective Hart met with Confidential Informant (“Cl”) at a private location. At the location, Cl agreed to attempt to purchase an amount of cocaine at 15 Bodwell Street, 1st floor, in Lawrence, MA from a Hispanic male known as “Danny.” Cl and Cl’s vehicle were searched for money and contraband and were found to be free of both US currency and contraband. An amount of US currency was given to Cl for the purchase of cocaine. Detective Hart followed Cl directly to the area of 15 Bodwell Street, Lawrence, MAin an unmarked car. Sgt. Carroll also set up on 15 Bodwell Street in an unmarked car. Sgt. Carroll and Detective Hart observed Cl walk directly to the side cellar door of 15 Bodwell St. Cl then walked around to the back of the residence and to the driveway-side house entrance and inside out of both Sgt. Carroll and Detective Hart’s sight. Approximately one minute later, Cl exited the same door it had entered and walked directly back to its vehicle. Cl drove directly to a predetermined meeting place while being followed by Sgt. Carroll. At the meeting spot Cl handed Sgt. Carroll a tied off plastic bag with a white powder substance in it. Through Sgt. Carroll’s training and experience, he knew the white powder to be cocaine. Cl and Cl’s vehicle were searched again and found to be free of both money and contraband.
Cl related the following information to Sgt. Carroll: Once inside the driveway-side door, Cl was met by a Hispanic male who came out of the 1 st floor. Cl asked for “Danny.” The Hispanic male identified himself as Danny and asked Cl what it needed. Cl asked for “coke” and handed a sum of money to Danny. Danny then handed Cl an amount of cocaine. Danny then went back into the 1st floor apartment and closed the door. Cl then left. Cl described Danny as 5’9" Hispanic male, short hair, and a “crossed stick tattoo” on his chest.
On or about May 24, 2005, Sgt. Carroll met Cl at a private meeting spot. Cl agreed to attempt to purchase an amount of cocaine at 15 Bodwell Street, Lawrence, MA. Cl and Cl’s vehicle were searched and found to be free of both contraband and US currency. An amount of US currency was given to Cl to purchase an amount of cocaine. Sgt. Carroll followed Cl from the meeting spot directly to 15 Bodwell Street. With Cl en route to 15 Bodwell Street, Detective Hart began surveillance of 15 Bodwell Street in an unmarked car. Detective Hart observed Cl park its vehicle and walk directly to the side cellar door that was covered by plywood. The door was partially blocked by a gray colored Chevy Suburban without license plates. Detective Hart observed Cl knock on the plywood covered door and saw the door partially open. Detective Hart then saw Cl talking to somebody in the doorway. Less than one minute later, Cl walked back to its vehicle and drove away. Cl was followed back to a predetermined meeting spot. At the spot, Cl handed Detective Hart an amount of white powder consistent in appearance and packaging, which was known to Detective Hart as cocaine. Cl and Cl’s vehicle were searched again and found to be free of US currency and contraband.
Cl related the following information to Hart: Once Cl knocked on the side wood covered door, Cl heard someone ask what it wanted. Cl said “Danny.” The *179 door opened and Cl recognized the person as Danny. Cl gave Danny an amount of US currency for an amount of cocaine. Cl then left in Cl’s vehicle. Cl describes Danny as a 5’9" Hispanic male, short hair, and a tattoo or scar that looks like two crossed sticks on his upper chest near the collarbone.
At the Defendant’s hearing, it was conceded by both parties that the Defendant does not have a “crossed sticks” scar or tattoo on his chest, but he does have a tattoo on his upper right arm. Also, the Commonwealth stated that it would not call Cl as a witness at the Defendant’s trial.
DISCUSSION
1. Probable Cause in Support of Search Warrant Based on Information Supplied by Confidential Informant
The Defendant seeks to suppress the evidence seized pursuant to the search warrant because the facts contained in the warrant are false and, if stricken, the search warrant would lack probable cause.
Probable cause exists when the facts and circumstances known by the police are sufficient to warrant a prudent person in believing that a crime has been committed. Commonwealth v. Storey, 378 Mass. 312, 321 (1979). Probable cause is “more than mere suspicion but something less than evidence sufficient to warrant a conviction.” Commonwealth v. Troung Vo Tan, 49 Mass.App.Ct. 31, 37 (2000).
To find probable cause for the issuance of a search warrant, there must be, within the four comers of the application and affidavit, a substantial basis for the belief that there is a timely nexus between evidence of criminal activity, a particular object to be seized, and a particular place or person to be searched. Commonwealth v. Cinetti, 389 Mass. 197, 213 (1983), citing Commonwealth v. Cefalo, 381 Mass. 319, 328-29 (1980)). The affiant must produce more than a mere statement of belief by setting forth the underlying circumstances that produce the belief. Commonwealth v. Von Utter, 355 Mass. 597, 599 (1969).
When an application for a search warrant is based on information supplied by an anonymous and confidential informant, Massachusetts follows the two-pronged test set out in Aguilar v. Texas, 378 U.S. 108, 114 (1964), and Spinelli v. United States, 393 U.S. 410, 415 (1969). Commonwealth v. Upton, 394 Mass. 363, 374-75 (1985). In such a case, the officer’s affidavit must supply the issuing clerk or judge with facts showing (1) that the informant had a sufficient basis of knowledge and (2) that the informant is a credible person or his information is reliable. Id. If the informant has first-hand knowledge, and this fact is detailed with sufficient specificity by the affiant, then the basis of knowledge prong is satisfied. Commonwealth v. Allen, 406 Mass. 575, 578 (1990).
Here, the affidavit sufficiently details that Cl personally purchased cocaine on two occasions from the Defendant. This suffices to meet the basis of knowledge requirement. See Commonwealth v. Montanez, 410 Mass. 290, 299-300 (1991) (satisfying the knowledge prong where informant saw and bought cocaine from the defendant). With regard to the credibility of Cl or the reliability of its information, the affidavit gives specific occasions in the past where Cl provided information to officers and made controlled buys that led to arrests and seizures of drugs, currency and guns. Moreover, the conduct of the police corroborated the information supplied by the informant in that the Cl’s two controlled buys on May 18, 2005 and May 24, 2005 met the well established standards for a controlled buy.[1] Here, the Cl was met by police officers making the controlled buys, the Cl was free of any contraband or US currency and was given money to purchase drugs, officers followed Cl to the premises and watched the Cl enter and leave the premises, and Cl turned over the cocaine it purchased. The results of this carefully supervised and controlled buy corroborates the reliability and credibility of the CL See Commonwealth v. Warren, 418 Mass. 86, 90 (1994) (informant’s personal observation combined with police supervision of “controlled buy” was sufficient to satisfy the veracity of the informant).
2. Significance of Factual Inaccuracies in Information Supplied by Cl
In both instances of the controlled buys, Cl described the seller as a 5’9" Hispanic male, short hair, and a tattoo or scar that looks like “crossed sticks” on his chest. The Defendant argues that Cl’s description of a “crossed sticks” scar or tattoo on Defendant’s chest or upper body is false, and if excised from the affidavit, would invalidate the search warrant for lack of probable cause. However, the mere existence of an incorrect assertion of fact in an affidavit does not necessarily invalidate the finding of probable cause.
As noted above, the law requires that when an affidavit rests on information supplied by a confidential informant the affiant must demonstrate underlying circumstances that support the informant’s basis of knowledge and credibility, not the truth of every assertion made by the informant. To suggest that an error made by a confidential informant is tantamount to an error made by the affiant would require personal knowledge on the part of the affiant of every fact supplied by an informant. This would eviscerate the Aguilar-Spinelli test adopted by our Supreme Judicial Court in the Upton case. See Commonwealth v. Valsez, 402 Mass. 65, 70 (1988) (“Negligent misrepresentations [by the affiant] . . . cannot form the basis of suppression under Franks [v. Delaware, 438 U.S. 154 (1978)] or art. 14”). This is consistent with the fundamental understanding of probable cause as based on the reasonableness of the affiant’s belief at the time the warrant is sought, and not on whether a fact-finder *180 later determines that the facts are true. See Commonwealth v. Wilkerson, 436 Mass. 137 (2002) (“Probable cause to arrest is not vitiated when the basis on which the police officer acted is shown after the fact to have been erroneous, because the existence of probable cause is determined at the moment of arrest, not in light of subsequent events”) (quotation omitted). See also Commonwealth v. Skea, 18 Mass.App.Ct. 685, 689 (1984) (probable cause does not demand a showing that a belief is correct or more likely true than not true).[2]
The Defendant also maintains that the court at a minimum should conduct a hearing, in camera, and examine the Cl now that the Commonwealth concedes that the affidavit contains at least one false statement about the tattoo. Under Massachusetts law, there are two circumstances in which a defendant may be entitled to an evidentiary hearing in connection with evidence seized pursuant to a search warrant issued by a judicial officer. First, a so-called “Amaral hearing” should be conducted if the defendant by affidavit “asserts facts which cast a reasonable doubt on the existence of the informant or on the veracity of material representations made by the affiant concerning the confidential informant.” Commonwealth v. Amral, 407 Mass. 511, 522 (1990). See also Commonwealth v. Abdelnour, 11 Mass.App.Ct. 531, 535-36 (1981). Second, a so-called “Franks hearing” should be conducted if the defendant makes “a substantial preliminary showing” that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant. See Franks v. Delaware, 438 U.S. 154, 171-72 (1978); Commonwealth v. Youngworth, 55 Mass.App.Ct. 30, 37-38 (2002). Thus, the mere existence of factual statements by a Cl that later prove to be false provides no grounds for relief unless there is reason to be that some misconduct on the part of the affiant was a contributing factor.
Although neither the United States Supreme Court nor the Supreme Judicial Court has dealt expressly with this point, it is the position adopted by the majoriiy of jurisdictions to consider the question. See United States v. Procopio, 88 F. 3d 21, 26 (1st Cir. 1996) (hearing under Franks v. Delaware, 438 U.S. 154 (1978), properly denied where officer-affiant did not know, at the time search warrant was issued, of a statement by informant’s source that he did not give a confession to anyone); United States v. Roth, 201 F.3d 888, 892 (7th Cir. 2000) (whether informant made untrue statements is not relevant unless defendant shows affiant included statements with knowledge or in reckless disregard of their falsity). This view is consistent with the understanding that the application of the exclusionary rule in this context is principally designed to deter unlawful action by law enforcement. See Theodor v. Superior Court, 8 Cal.3d 77, 97 (1972) (“To exclude evidence obtained pursuant to a warrant issued on the basis of facts upon which an affiant has reasonably relied as being accurate serves no purpose of deterrence to unlawful conduct since, by definition, the affiant has already made a reasonable attempt to comply with the requirements of the Fourth Amendment”). Accord, Commonwealth v. Wilkerson, supra. For this reason, only when the affiant is responsible for submitting a factually inaccurate statement to the court should the erroneous statement be excised from the affidavit. Theodor v. Superior Court, supra. See State v. Malkin, 678 P.2d 1356 (Alaska App. 1984) (following the reasoning of Theodor). Accord, W.R. LaFave, Search and Seizure, §4.4(b) at 539-41.[3]
The Defendant’s motion to suppress evidence seized pursuant to the search warrant is DENIED.
3. Disclosure of the Identity of Confidential Informant
In the alternative, the Defendant seeks an order from the court directing the Commonwealth to disclose the name, date of birth, and address of Cl because they are necessary, relevant and helpful to the defense and are essential to a fair determination of this case. The Defendant argues that the denial of access to Cl’s information will seriously prejudice the Defendant’s trial defense and challenge of the search warrant.
The prosecution has a duly to turn over exculpatory evidence, including evidence which reflects unfavorably on the credibility of its witnesses. Mass.R.Crim.P. 14. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that suppression of material evidence favorable to accused violates due process); Commonwealth v. Daye, 411 Mass. 719, 728-29 (1992) (providing that evidence is material if it would change the outcome of a trial).
In general, the government has a privilege against disclosure of the identity of a confidential informant. Commonwealth v. Douzanis, 384 Mass. 434, 441 (1981). See also Roviaro v. United States, 353 U.S. 53, 59 (1957). However, one of the limitations on the applicability of the privilege arises from the fundamental requirements of fairness.
Where the disclosure of an informer’s identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
Commonwealth v. Nelson, 26 Mass.App.Ct. 794, 797 (1989), quoting Rosario, 353 U.S. at 60-61).
Here, the Defendant seeks to obtain the identity of Cl primarily because of one incorrect fact Cl relayed to the police. Both parties agreed that while the Defendant does not have a “crossed sticks” scar or tattoo on his chest, he does have a tattoo on his upper right arm. As all of the other information from Cl is consistent, it is more likely that Cl’s observation on the *181 Defendant’s tattoo is simply inaccurate as to the location of the tattoo rather than fabricated. This information is not material and hence, not exculpatoiy because the informant will not be a Commonwealth witness. It is not necessary to disclose Cl’s identity in preparation of the Defendant’s defense when the witness is not being called. The Defendant’s request to disclose the identity of Cl is DENIED.
ORDER
For the above reasons, the Defendant’s motion to suppress is DENIED.

Commonwealth v. Desper, 419 Mass. 163 (1994).
Generally, a “controlled buy” has, at a minimum, these components: (1) a police officer meets the informant at a location other than the location where it is suspected that criminal activity is occurring; (2) the officer searches the informant to ensure the informant has no drugs on his person and (usually furnishes the informant with money to purchase drugs; (3) the officer escorts or follows the informant to the premises where it is alleged illegal activity is occurring and watches the informant enter and leave those premises; and (4) the informant turns over to the officer the substance the informant has purchased form the resident of the premises under surveillance.
Id. at 168.

There is no evidence before the court that the confidential informant purposely or intentionally misrepresented the information about the location of the defendant’s tattoo to the affiant. In such a case, it may still be that the outcome should turn on the reasonableness of the affiant’s reliance on the information supplied by the Cl. See Commonwealth v. Valsez, 402 Mass. 65, 69-70 (1988), and cases cited.

Even with the erroneous portion excised from the affidavit, the facts taken together are sufficient to establish probable cause for the issuance of a search warrant