NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1469                                          Appeals Court

COMMONWEALTH  vs.  GOVANNY RAMOS.

No. 14-P-1469.

Suffolk.     March 16, 2015. - August 14, 2015.

Present:  Katzmann, Milkey, & Agnes, JJ.


Search and Seizure, Motor vehicle, Reasonable suspicion.
    Constitutional Law, Search and seizure, Reasonable
    suspicion.  Registrar of Motor Vehicles, Records.
    Practice, Criminal, Motion to suppress, Record.  Motor
    Vehicle, Receiving stolen motor vehicle.



    Complaint received and sworn to in the Chelsea Division of
the District Court Department on October 17, 2013.

    A pretrial motion to suppress evidence was heard by
D. Dunbar Livingston, J.

    An application for leave to prosecute an interlocutory
appeal was allowed by Robert J. Cordy, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by him to the Appeals Court.


    Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.
    Megan Ruebsamen for the defendant.

KATZMANN, J.  This appeal by the Commonwealth poses the questions whether police officers may reasonably rely on information from the Registry of Motor Vehicles (RMV) database concerning reports of stolen vehicles and whether a District Court judge erred in employing the Aguilar-Spinelli test in allowing the defendant's motion to suppress.  Aguilar v. Texas, 378 U.S. 108 (1964).  Spinelli v. United States, 393 U.S. 410 (1969).  See Commonwealth v. Lopes, 455 Mass. 147, 155-156 (2009) (Lopes).  We reverse.

Background.  After an evidentiary hearing, a District Court judge found the following.  On October 17, 2013, State Trooper Edmund Hartwell was assigned alone and in uniform to a cruiser patrol.  That morning, Hartwell was parked on Everett Avenue, opposite Chelsea High School, observing traffic.  While parked, Hartwell saw a red sport utility vehicle (SUV) go past.  Hartwell noticed that the driver, who was later identified as the defendant, Govanny Ramos, was not wearing a seatbelt and appeared to have his hands in his lap.  Hartwell "ran" the registration of the SUV using his mobile data terminal (MDT) to query the RMV database.  The vehicle "came back stolen."  The description of the motor vehicle in the RMV database matched the SUV Hartwell observed.  Hartwell followed the SUV and contacted the dispatch center at the State police headquarters in Danvers to get confirmation that the SUV was stolen.  The dispatch

center confirmed that the SUV with the particular registration plate and description was reported as stolen.

Hartwell followed the SUV until it turned into a driveway to a residential building on Addison Street and stopped. He activated his lights and siren when the SUV began to turn into the driveway, and then pulled partially into the driveway behind the SUV. There was a fence in front of and along the driver's side of the SUV. The defendant opened the driver's side door and got out of the SUV, tossing a small plastic bag with a green leafy substance on the ground. Hartwell directed the defendant to come towards him, and the defendant complied. Hartwell told the defendant that he was going to place him in custody to discuss the situation; he then handcuffed the defendant. Hartwell advised the defendant of his Miranda rights, which the defendant said he understood. While in custody at the scene, the defendant explained to Hartwell that he had borrowed the vehicle from a friend, Joel Rodriguez, and that the vehicle belonged to Rodriguez's girlfriend. Hartwell then placed the defendant under arrest. The defendant was charged in District Court with unlicensed operation of a motor vehicle, in violation of G. L. c. 90, § 10, and receiving a stolen motor vehicle, subsequent offense, in violation of G. L. c. 266, § 28(a).

Claiming violation of the rights guaranteed under the Fourth Amendment to the United States Constitution and art. 14

of the Massachusetts Declaration of Rights in protection against unreasonable searches and seizures, the defendant moved to suppress evidence that resulted from the stop and warrantless search by the State police including, but not limited to, statements made by the defendant, any actions of the defendant, any observations of police officers, and any other evidence that resulted from his seizure and subsequent search.  A District Court judge, citing Lopes, 455 Mass. at 154-156, allowed the defendant's motion and found that the stop of the defendant's vehicle was not justified because the Commonwealth failed to prove that the information Hartwell received from the RMV database satisfied the familiar Aguilar-Spinelli test "demonstrating a sufficient basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test)."  See Lopes, supra at 155-156.  The Commonwealth then filed an application for leave to appeal, which a single justice of the Supreme Judicial Court allowed.  See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).  In this interlocutory appeal, the Commonwealth contends that the judge erred by applying the Aguilar-Spinelli test and allowing the defendant's motion to suppress.  We agree.

Discussion.  "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [the judge's] ultimate findings and conclusions of law.'"  Lopes, 455 Mass. at 153, quoting from Commonwealth v. Scott, 440 Mass. 642, 646 (2004).

Police officers may make a traffic stop when they have "a reasonable, articulable suspicion that a person in a vehicle has committed, is committing, or is about to commit a crime."  Commonwealth v. Greenwood, 78 Mass. App. Ct. 611, 616, cert. denied, 132 S. Ct. 327 (2011).  This suspicion "must be based on specific, articulable facts and reasonable inferences drawn therefrom."  Commonwealth v. Ancrum, 65 Mass. App. Ct. 647, 651 (2006).  Our analysis is ultimately a practical one.  See Lopes, 455 Mass. at 158-159.  In this case, Hartwell used his MDT to learn that the SUV the defendant was driving was listed as stolen in the RMV database.  He saw that the description of the SUV in the database matched the SUV Hartwell observed.  He pursued the inquiry further by contacting the dispatch center, which confirmed that the SUV with the particular registration plate and description was reported as stolen.  Whether Hartwell had reasonable suspicion based on the stolen motor vehicle record in the RMV database depends on whether it was reasonable for Hartwell to rely on the information that the SUV was stolen.

The defendant argues that the information provided by the RMV database and the dispatch center amounts to information from an anonymous informant that requires a further showing of reliability and credibility under the Aguilar-Spinelli test before it can be relied on by the police. See Commonwealth v. Costa, 448 Mass. 510, 514-515 (2007). However, because Hartwell's stop was based on information gained from the RMV database through his MDT and not from information gained from an informant, "the usual rule applies that upholds an arrest on otherwise reliable information . . . ." Commonwealth v. Wilkerson, 436 Mass. 137, 141 (2002) (Wilkerson).[1]

Here, the RMV records that formed the basis of Hartwell's reasonable suspicion have sufficient indicia of reliability on which to predicate a traffic stop. See Wilkerson, 436 Mass. at 141-142. Indeed, RMV records are generally considered reliable. See ibid. (holding that it was reasonable for police officer to rely on RMV record when making arrest for motor vehicle

_____

[1] The defendant argues that the "governing rule for cases involving police broadcasts . . . is that the Commonwealth is responsible for presenting evidence that shows the reliability of the underlying information (i.e., the police dispatch and RMV record) . . . ." See Lopes, 455 Mass. at 155-156. Here, however, the rule regarding radio broadcasts is inapplicable, as the officer was not relying on information in a radio broadcast concerning a description of a possible crime and of a motor vehicle where the transmitted information required adequate indicia of reliability; rather, the officer sought information regarding a specific license plate number from the RMV, whose information already bore sufficient indicia of reliability. See discussion infra.

offense).  The court in Wilkerson concluded that the police had "no basis to question" the results of the query to the RMV "or to verify it independently."  Id. at 142.  In addition, we note that the law promotes the reliability of reports of stolen vehicles by punishing false reports and requiring the owner of a stolen motor vehicle to sign and submit to the police "a statement under the penalties of perjury . . . relating to the theft or misappropriation of the vehicle."  G. L. c. 266, § 29, as appearing in St. 1980, c. 463, § 4.  See G. L. c. 268, § 39.  Furthermore, anyone who makes a written statement to the RMV alleging the theft of a motor vehicle does so on a signed form that gives printed notice that false statements are punishable under penalty of perjury, subjecting the individual to criminal liability.  G. L. c. 268, § 39.  See Commonwealth v. Kelly, 69 Mass. App. Ct. 751, 753-754 (2007) (describing stolen vehicle report form).  Because false reports of motor vehicles are punished by statute, it is both reasonable and practical to assume that reports of stolen vehicles to the RMV are reliable.

Our conclusion is aligned with the foundation of the exclusionary rule -- an interest in deterring unlawful police conduct.  See Wilkerson, 436 Mass. at 142.  This "interest . . . is not implicated where police rely on records of an independent State agency, such as the registry [RMV], to make an otherwise proper arrest."  Ibid.  It was reasonable for Hartwell to rely

on the information from the RMV database because it had sufficient indicia of reliability and, thus, was sufficient to give Hartwell reasonable suspicion to make the traffic stop. Because the stop of the defendant was supported by reasonable suspicion based on reliable information, the stop was justified and did not violate the defendant's rights under the Declaration of Rights, art. 14, or the Fourth Amendment.

<u>Order allowing motion to suppress reversed</u>.