NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-447

COMMONWEALTH

vs.

HERIBERTO HERNANDEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Heriberto Hernandez, was indicted on one count of trafficking fentanyl, in violation of G. L. c. 94C, § 32E (c 1/2), after police found the drugs during a vehicle search subsequent to his arrest for operating with a suspended driver's license, in violation of G. L. c. 90, § 23. The defendant filed a motion to suppress, which a Superior Court judge denied prior to trial. Following a trial, a Superior Court jury convicted the defendant. On appeal, the defendant challenges the denial of the motion to suppress. We affirm.

Background. We summarize the facts found by the motion judge and from undisputed evidence from the record that has been implicitly credited by the motion judge. Commonwealth v.

<u>Tremblay</u>, 480 Mass. 645, 654-655 (2018).  In early February 2020, a confidential informant (CI) told State police Trooper Jamie Vitale that a gray Chevrolet Trailblazer was involved in transporting heroin and fentanyl from New York to central Massachusetts and provided the license plate number of the vehicle.  Working with other state and federal law enforcement officers as part of a narcotics task force, Trooper Vitale conducted surveillance of the vehicle.  The officers obtained a photograph from a license plate reader showing the vehicle parked on a street in New York.  On or about February 15, 2020, the CI made a controlled purchase of fentanyl from the driver of the Trailblazer, later identified as the defendant.  After task force officers surveilled that purchase, they also watched the defendant drive the Trailblazer to other locations and appear to engage in other drug transactions.  The officers stopped the vehicle and identified the defendant by his New York driver's license.  Although the police learned that the defendant's right to operate a vehicle in Massachusetts had been suspended, they allowed him to leave.

On the morning of February 25, 2020, a confidential source[1] told Trooper Vitale that the Trailblazer would be traveling from

---

[1] The judge found that it was unclear whether the source was the same CI who initially provided information to the trooper and who had participated in the controlled purchase.

New York to central Massachusetts that morning with narcotics. Trooper Vitale set up surveillance on Route 84 in Connecticut, about fifteen miles from the Massachusetts border. Around 10:20 A.M., he saw the Trailblazer traveling toward Massachusetts and contacted State police Trooper Michael Barrera. He informed Trooper Barrera that the defendant was suspected of transporting fentanyl in the Trailblazer and provided the defendant's name and date of birth, a photograph of the defendant, and a photograph of the license plate of the vehicle. He also informed Trooper Barrera that the defendant's Massachusetts driver's license was suspended.

Trooper Barrera confirmed through the Criminal Justice Information Services (CJIS) database that the defendant's license was suspended. He saw the Trailblazer and pulled the vehicle over. When Trooper Barrera asked the defendant where he was going, the defendant replied that he was coming from Connecticut and going to Worcester to visit a friend. Trooper Barrera noticed that the defendant was shaking and sweating. The defendant provided his New York driver's license, which listed a different address from the one on file with the Massachusetts Registry of Motor Vehicles. After the defendant's arrest for operating a motor vehicle with a suspended license, the police searched the vehicle and found a box containing a white powder which the defendant acknowledged was fentanyl.

3

Discussion. 1. Reasonable suspicion to stop. "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error . . . . We review independently the application of constitutional principles to the facts found" (citation omitted). Commonwealth v. Cordero, 477 Mass. 237, 241 (2017).

To conduct a valid warrantless investigatory stop, the police must have "reason to suspect that a person has committed, is committing, or is about to commit a crime." Commonwealth v. Silva, 366 Mass. 402, 405 (1974). "Reasonable suspicion must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience" (quotation and citation omitted). Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 8 (2023). Here, where the police based their reasonable suspicion to stop the defendant on an informant's tip rather than their own observations, the Commonwealth must demonstrate both underlying circumstances demonstrating the informant's basis of knowledge and some underlying circumstances from which police could have concluded that the information was reliable, known as the "Aguilar-Spinelli" factors. Commonwealth v. Va Meng Joe, 425 Mass. 99, 102-103 (1997). See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). "Independent police corroboration may make up for deficiencies in one or both

4

of these factors" (citation omitted).  Commonwealth v. Depiero,

473 Mass. 450, 454 (2016).

The defendant argues that there is no evidence of the

confidential source's reliability and basis of knowledge and

that the judge erred in finding that the information presented

by the troopers was sufficient independent corroboration of the

tip.  These arguments lack merit.  The defendant is correct that

there was no evidence in the record about the identity of the

tipster from February 25 or whether the source was the same

person who participated in the controlled purchase two weeks

earlier.  Indeed, the judge found that it was unclear whether

the police knew the identity of the person providing the tip.[2]

However, even assuming the tip came from an anonymous informant,

the police had sufficient reasonable suspicion to justify the

stop of the defendant.  At the time of the stop, police knew

that the defendant had sold fentanyl to a confidential informant

and engaged in other drug transactions approximately ten days

before.  They knew that he resided in New York, that he drove a

Trailblazer while involved in drug transactions, and that the

Trailblazer was in New York in early February.  The police

received a tip that the Trailblazer would potentially be

---

[2] The judge did not review the tip under the basis of knowledge or reliability tests and concluded that police sufficiently corroborated the information provided by the informant.

5

traveling from New York to central Massachusetts transporting drugs. When the police tracked the defendant driving the Trailblazer on the highway from Connecticut into Massachusetts on February 25, the police corroboration of the tip provided sufficient reasonable suspicion to justify the stop. See Commonwealth v. Anding, 104 Mass. App. Ct. 770, 773 (2024) (corroboration of "critical component" of tip provides "strong indicator of reliability" [citation omitted]).

We also find unpersuasive the defendant's contention that there was no evidence to conclude that the defendant was involved in the interstate transportation of drugs based on the hand-to-hand transactions. As we have just discussed, there was evidence beyond the controlled purchase that corroborated details in the tip concerning the defendant's movement between New York and central Massachusetts in the same vehicle he used during the controlled purchase.

The defendant also argues that the judge erred in determining that the police knew that the defendant kept the vehicle with him in New York or that he stayed in New York during the time of the police investigation. We disagree. The judge credited Trooper Vitale's testimony that a photograph from a license plate reader showed the Trailblazer parked on a street in New York. See Commonwealth v. Hoose, 467 Mass. 395, 399 (2014) ("[W]e defer to the judge's determination of the weight

6

and credibility to be given to oral testimony presented at a motion hearing").  Considering also that the police knew the defendant had an active New York driver's license listing a New York address and that the defendant was the sole occupant of the vehicle during the controlled purchase, the judge could reasonably infer that the police knew the defendant had stayed in New York with the Trailblazer.

2.  Probable cause to arrest.  The defendant contends that Trooper Barrera lacked probable cause to arrest him on the charge of operating with a suspended license based on the information he had at the time of the stop because the CJIS report on Barrera's portable computer was "bare" and not reliable.  We are not persuaded.  Trooper Barrera checked the CJIS database and discovered that the defendant's driver's license had been suspended.  Trooper Barrera properly relied upon this information, which gave him probable cause to believe that the defendant was operating a motor vehicle on a public way after his license had been suspended, in violation of G. L. c. 90, § 23.  See Commonwealth v. Ramos, 88 Mass. App. Ct. 68, 71 (2015) (RMV records that formed basis of reasonable suspicion have sufficient indicia of reliability on which to predicate traffic stop).

The defendant's argument that the CJIS report contained insufficient identifying information such as his social security

7

number, middle name, or height lacks merit. The defendant's name and date of birth on his New York driver's license matched the name and date of birth in the CJIS result. Moreover, the defendant explained to Trooper Barrera that his license was suspended because he received a citation while working for a taxi company, and the company was supposed to pay the ticket. On the morning of the stop, Trooper Vitale also sent a surveillance image of the defendant to Trooper Barrera. The evidence in the record amply supports the judge's finding that Trooper Barrera had sufficient probable cause to arrest the defendant for operating a motor vehicle with a suspended license.

3. Pretextual stop. For the first time on appeal, the defendant argues that the traffic stop was an impermissible pretext to conduct an investigatory search of the vehicle. Because the defendant raises this argument for the first time on appeal, we review for substantial risk of miscarriage of justice. See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795 (2019). "[I]f the record is incomplete or otherwise not adequate to permit review on the merits, the defendant . . . is left to pursue a remedy, if any, in the trial court and appellate relief is denied." Id. "[I]f the record permits review on the merits and . . . there is error, we review the

8

record as a whole to determine whether the error created a substantial risk of a miscarriage of justice."  Id.

Here, our review of the record leads us to conclude that it is inadequate to permit us to reach the merits.  In his motion to suppress, the defendant did not raise the argument that the stop was pretextual, and the judge did not address the issue. See Commonwealth v. Silva, 440 Mass. 772, 782 (2004), citing Commonwealth v. Rivera, 429 Mass. 620, 623 (1999) (waiver doctrine precludes defendant who did not properly alert motion judge to issue from raising it on appeal).  The defendant, however, may seek relief by raising an ineffective assistance claim through a motion for a new trial.  See Commonwealth v. Piard, 105 Mass. App. Ct. 428, 438-439 (2025).

Judgment affirmed.

By the Court (Walsh, Toone & Tan, JJ.[3]),

Clerk

Entered:  April 15, 2026.

---

[3] The panelists are listed in order of seniority.

9