COMMONWEALTH *vs.* ARTHUR S. HECOX.

No. 92-P-846.

Bristol. May 17, 1993. - September 7, 1993.

Present: DREBEN, KAPLAN, & IRELAND, JJ.

*Practice, Criminal*, Appeal. *Arrest. Search and Seizure*, Probable cause, Arrest. *Probable Cause. Constitutional Law*, Search and seizure, Probable cause. *Controlled Substances.*

Discussion of cases considering the propriety of police action that is based on erroneous or outdated information. [282-284]

Where police officers act on the basis of outmoded records or stale information that is demonstrably incorrect, and the action is challenged by a defendant as lacking probable cause, the Commonwealth has the burden of justifying its failure to update its records or provide correct information to police officers in the circumstances. [284-285]

In a criminal case in which police officers stopped the defendant solely for the reason that they believed a warrant was outstanding for his arrest, whereupon they found him in possession of a quantity of cocaine, the defendant's motion to suppress the cocaine should have been allowed: at the time of the arrest no warrant was outstanding; the defendant had five days earlier surrendered himself to any warrant that might have been outstanding and had been released; and at the hearing on the motion the Commonwealth produced no evidence to justify the delay in supplying police officers with correct information. [285]

INDICTMENT found and returned in the Superior Court Department on June 27, 1989.

A motion to suppress was heard by *James J. Nixon*, J., and the case was heard by *Gerald F. O'Neill, Jr.*, J.

*Daniel L. Viveiros* for the defendant.

*John P. Letourneau*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. Convicted of trafficking in cocaine, the defendant appeals, claiming that evidence of the cocaine seized

from him should have been suppressed. Because we agree with his contention, we reverse his conviction.[1]

We take our facts from the motion judge's findings, supplemented interstitially by a few details from the testimony of Officer LaPointe, the only witness at the hearing on the motion to suppress. On November 21, 1988, Officer LaPointe, a member of the Fall River police department, interviewed a woman who told him that she had had an argument in a bar with a person named Scott, that he had struck her in the face, had chased her through some yards in the area, and had fired a shot at her. She knew the assailant by the first name of "Scott" and knew that he drove a maroon Lincoln with a partial plate number of "411." When shown some photographs, she identified Arthur Scott Hecox as her assailant.

As a result of his investigation, Officer LaPointe filed a report requesting that a complaint be sought and that an arrest warrant issue for Hecox for the offense of assault with intent to murder, together with two lesser complaints. The docket suggests that the complaint issued, together with a warrant, on November 21, 1988.[2] We next quote from the judge's findings:

---

[1]The defendant also argues that the evidence presented at trial was equally consistent with personal use as with trafficking, and, therefore, his motion for a required finding of not guilty on the charge of trafficking should have been granted. We need not reach this issue but point out that this claim is most dubious since, in addition to the large quantity (52.57 grams), there was expert evidence that the amount was more consistent with distribution than with personal use. See *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 759 n.14 (1984). Compare *Commonwealth* v. *Murphy*, 34 Mass. App. Ct. 16, 17-18 & n.2 (1993).

[2]The docket shows, among other items, two headings. Under one entitled "date of complaint" is the entry "11/21/88" and under another heading entitled "return date and time" is the entry "Warrant." There was evidence at the motion hearing that suggests that no warrant issued. LaPointe was asked on cross-examination:

Q. "You also found out that no warrant had ever issued?"

A. "I believe I found that out either that night or early in the morning" (i.e., later in the morning after the arrest).

The defendant in his brief, relying on the transcript, claims that no warrant issued. The judge was entitled to construe the docket to mean that a warrant did issue.

"By some means not clear from the evidence offered, the defendant became aware of the complaint sought against him. He appeared in the District Court [on November 22, 1988] where he was arraigned and released on personal recognizance before the warrant had actually issued. It is apparently the procedure in Fall River District Court for the 'court liaison officer' to request complaints and warrants. The information of the arraignment of this defendant was not conveyed to Officer LaPointe.

"On the early morning of November 27, 1988, shortly after coming on watch, Officer LaPointe spotted the maroon Lincoln with the plate designation, in part, of '411.' Officer LaPointe concluded that the defendant was across the street in a bar, and he anticipated that the defendant would be exiting the bar and going to his automobile about 1:00 or 1:30 a.m. Officer LaPointe called for backup assistance and, subsequently, two additional cruisers appeared and joined Officer LaPointe in his observation location at the end of the block in which the car was parked.

"The officers in the cruisers observed the defendant and his girlfriend come out of the bar, walk across the street and enter the maroon Lincoln. At this time, the officers converged on the maroon Lincoln and blocked any possibility of exit. Officer LaPointe got out of his vehicle and approached the maroon Lincoln. He noticed the driver holding a white bag in an open position up to his face. As Officer LaPointe approached the operator of the Lincoln, he put the bag down on the floor of the car.[3] At that point, Officer LaPointe unholstered his service revolver and, pointing it at the operator of the vehicle, instructed him to put his hands on the steering wheel. He then opened the door of the car and instructed the operator to 'Get out.' The operator of the maroon Lincoln was the defendant, Arthur S. Hecox,

---

[3] At that time Officer LaPointe could not identify what was in the bag.

a/k/a Scott Hecox. Officer LaPointe then positioned the defendant with his hands on the roof of the maroon Lincoln and conducted an initial patdown for weapons.

"With the defendant out of the vehicle, his girlfriend exited the vehicle on the passenger side. Officer La-Pointe observed a bag of white powder on the floor of the driver's side. It appeared to him to be the same white bag that had been held up to the defendant's face. Officer LaPointe, as a result of the Police Academy, in-house training and his experiences as a police officer, felt with reasonable certainty that the white powder was cocaine. It appears that he simultaneously[*] learned that the defendant had been to court and had been released on personal recognizance and that the warrant, if ever issued, was not now outstanding. Officer LaPointe, however, realized that he had a 'possession with intent to distribute,' given the quantity of white powder, and placed the defendant under arrest for possession with intent to distribute."

Based on these findings, the judge ruled that LaPointe was under a reasonable, good faith belief that an arrest warrant was outstanding, that he could briefly detain Hecox, and that, when he saw the cocaine in plain view, he could seize the drugs.

As we shall shortly discuss, we do not think the good faith exception to the exclusionary rule of the Fourth Amendment to the United States Constitution applies in these circumstances. The problem arises because LaPointe's information at the time of the defendant's initial detention did not accurately reflect the current situation known to other law enforcement authorities. Hecox's voluntary appearance at the District Court on November 22, 1988, had rendered the arrest warrant, if it had issued, obsolete at the time that La-

---

[*] The evidence as to when LaPointe learned of the defendant's court appearance was most confusing. When asked on cross-examination if, prior to arresting Hecox, he had received a communication that Hecox had already been to court, LaPointe answered: "If they said it, there would be no proof to back it up."

Pointe on November 27 detained and subsequently arrested the defendant.[5] The judge's findings imply either that Officer LaPointe did not check with his communications office or he received incorrect data until the time he arrested the defendant.

In the analogous situation of outmoded computer records, courts have expressed their serious concern with police action based on incorrect information. See, e.g., *Ott* v. *State*, 325 Md. 206, 219, cert. denied, 113 S. Ct. 295 (1992) (allowing "outdated, inaccurate information to remain in the computer . . . plac[es] citizens at risk of being deprived of liberty, without legal basis"). See also *United States* v. *Mackey*, 387 F. Supp. 1121, 1124 (D. Nev. 1975):

> "Because of the inaccurate listing in the NCIC computer, defendant was a 'marked man' for the five months prior to his arrest, and, had this particular identification check not occurred, he would have continued in this status into the indefinite future. At any time, as demonstrated by this situation, a routine check by the police could well result in defendant's arrest, booking, search and detention."

We have not been directed to any Massachusetts case considering a similar situation, and we have found none. The most pertinent authorities elsewhere deal primarily with police reliance on outdated computer information, and, although it is not clear that a computer was involved here, we consider those cases to be sufficiently comparable to the case at bar to be persuasive.

---

[5]If there was no probable cause to arrest there was here also no reasonable suspicion to conduct a threshold inquiry under *Terry* v. *Ohio*, 392 U.S. 1 (1968). LaPointe testified that there was nothing that the defendant did to arouse suspicion. We need not determine, therefore, whether the degree of intrusion in the circumstances amounted to an arrest. See *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985); *Commonwealth* v. *Moses*, 408 Mass. 136, 141 (1990); *Commonwealth* v. *Stawarz*, 32 Mass. App. Ct. 211, 213-214 (1992); Smith, Criminal Practice and Procedure § 72 (1983 & Supp. 1993).

We first mention that at trial, or for that matter on appeal, the defendant did not make any separate State constitutional claims but, rather, without relying on any specific constitutional clause, argued that his original detention was a warrantless arrest without probable cause. In such circumstances, we consider the defendant's contentions under Federal standards. See *Commonwealth* v. *Oakes*, 407 Mass. 92, 98-99 (1990); Smith, Criminal Practice and Procedure § 2, at 1 (Supp. 1993).[6]

Since the motion judge relied on Officer LaPointe's good faith, we must consider whether LaPointe's actions come within the ambit of *United States* v. *Leon*, 468 U.S. 897 (1984), the case holding that the exclusionary rule does not apply where police in good faith rely on a search warrant issued by a detached magistrate but ultimately found to be unsupported by probable cause. Most courts that have considered the question have held that *Leon* does not apply where an arrest is based on erroneous information supplied by the law enforcement authorities themselves. For example, in *Ott* v. *State*, 325 Md. at 211-219, where an arrest was made based on a warrant that had been satisfied seven days earlier, the Court of Appeals of Maryland, after analyzing authorities prior to and subsequent to *Leon*, as well as n.24[7] at 923 of *Leon* itself, concluded that *Leon* did not allow law enforcement authorities to rely on an error of their own making. As noted in *Albo* v. *State*, 477 So. 2d 1071, 1073 (Fla.

---

[6]Massachusetts has not adopted under State law the "good faith" doctrine of *United States* v. *Leon*, 468 U.S. 897, 906-907 (1984). *Commonwealth* v. *Pellegrini*, 405 Mass. 86, 91 n.6 (1989). See *Commonwealth* v. *Treadwell*, 402 Mass. 355, 356 n.3 (1988).

[7]That footnote reads as follows:

"References to 'officer' throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed the warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. See *Whitely* v. *Warden*, 401 U.S. 560, 568 (1971)."

Dist. Ct. App. 1985), an important basis for *Leon* was the determination that the interest in deterring unlawful police conduct, which is the foundation of the exclusionary rule, is not implicated where the police rely on the erroneous finding of a neutral judge or magistrate. In that instance, there is no police illegality or misconduct to deter. *Leon, supra* at 920-921. The situation is different where the arrest is based on erroneous information supplied by the law enforcement authorities, where there is police misconduct to deter. See *State v. Gough*, 35 Ohio App. 3d 81 (1986). See also other cases holding the good faith exception of *Leon* inapplicable to uncorrected, outdated police data, e.g., *State v. Peterson*, 171 Ariz. 333, 340 (Ct. App. 1991), cert. denied, 113 S. Ct. 465 (1992); *People v. Howard*, 162 Cal. App. 3d 8 (1984); *People v. Joseph*, 128 Ill. App. 3d 668 (1984); *People v. Mourecek*, 208 Ill. App. 3d 87 (1991); *State v. Taylor*, 468 So. 2d 617 (La. Ct. App. 1985). See also *State v. Moore*, 260 N.J. Super. 12, 16-17 (1992), and *People v. McElhaney*, 146 Misc. 2d 748, 751 (N.Y. Sup. Ct. 1990), rejecting an application of the good faith exception to an arrest made on a vacated warrant or an invalid stolen vehicle report because the highest courts in New Jersey and in New York have rejected the good faith exception on State constitutional grounds. Contra, however, is a Second Circuit case holding that the Vermont police had probable cause to arrest based on stale information from New Hampshire authorities. *United States v. Towne*, 870 F.2d 880, 884-885, cert. denied, 490 U.S. 1101 (1989).[8]

A number of cases prior to *Leon* also rejected "reasonable" reliance by police on stale information. See, e.g., *People v. Ramirez*, 34 Cal. 3d 541, 545 (1983); *People v. Mitchell*, 678 P.2d 990, 993-994 (Colo. 1984); *People v. Jennings*, 54 N.Y.2d 518, 523 (1981). Cf. *United States v. Mackey*, 387 F. Supp. at 1122. In these cases a finding of probable cause failed, not because the "facts" upon which the officer in good faith relied turned out to be false, but, rather, as explained

---

[8]This case is criticized in 2 LaFave, Search & Seizure § 3.5(d) n.82, at 4-5 (Supp. 1993).

by 2 LaFave, Search & Seizure § 3.5(d), at 21-22 (2d ed. 1987), "the police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected" or at fault in not informing themselves.

The authorities are not in accord as to what kind of delays will support the conclusion that the government is at fault. A number of cases have held that a short delay even if unexplained is acceptable. See *Childress* v. *United States*, 381 A.2d 614, 617 (D.C. 1977) (four days); *In re R.E.G.*, 602 A.2d 146, 149 (D.C. 1992) (three days); *Commonwealth* v. *Riley*, 284 Pa. Super. 280, 287 (1981) (arrest warrant satisfied four days earlier). But see *People* v. *Lent*, 92 A.D.2d 941 (N.Y. 1983) (eight hours); *People* v. *McElhaney*, 146 Misc. 2d at 749-750 (two days). These two New York cases indicate that any delay is intolerable, but it should be noted that *People* v. *Jennings*, 54 N.Y.2d at 523, may have left the door open to permit a short period.

Although the period in the case at bar, five days, is also short, we think that the better view, and the one that will operate as an incentive for maintaining efficient police records and communication, is provided by those cases (and also by 2 LaFave, Search & Seizure § 3.5(d), at 23-24 [2d ed. 1987 and Supp. 1993]) that hold that, where there is stale information or outmoded records that are demonstrably incorrect, the government has the burden of showing that it is not at fault in failing to update its records or to provide correct information. In *Ott* v. *State*, 325 Md. at 223, the court charged the police officer with knowledge of his own department's records and expressly rejected the intermediate appellate court's determination that the period of delay (seven days, two on a weekend and a third on a holiday) was not sufficient to amount to police misconduct.

"That determination . . . is not one that may be made as a matter of law. The question whether a lapse of time was sufficiently short so that reliance by the police may properly be considered reasonable and in good faith may be a mixed question of law and fact. More-

over, the burden to establish the facts underlying that determination rests with the State. And the good faith exception does not serve to excuse the State of that burden. Since the State failed to meet its burden of going forward with evidence as to the amount of time reasonably required to clear the computer of outdated information, not to mention the burden of persuasion on the issue, the trial court properly suppressed the evidence."

*Id.* at 222-223 (citations omitted).

In *State* v. *Moore*, 260 N.J. Super. 12 (1992), the defendant had posted bail on a bench warrant and had been released from jail forty-two days before her arrest on the warrant. Recognizing "that some delay in updating information is inherent and must be countenanced," the court held, however, "that where those records are demonstrably incorrect because the warrant has been vacated, the State must carry the burden to establish justification for any administrative delay in their update." *Id.* at 20. See also 2 LaFave, Search & Seizure § 3.5(d), at 5 (Supp. 1993) taking the position that fault cannot be decided as matter of law and that an arrest is invalid where the arresting officer acts upon information that, while originally correct, no longer applies, and through the fault of the government is retained in the system.

We agree with *Ott* and *Moore*, as well as LaFave, and hold that the question whether LaPointe's delay in obtaining the correct information was reasonable cannot here be determined as matter of law. Since the Commonwealth has failed to produce any evidence as to the time reasonably needed to inform police officers of the appearance of the defendant in court, it has not met its burden of justifying the administrative delay that resulted in his detention. Accordingly, we hold that the motion to suppress should have been allowed. Since without the evidence suppressed there was no other evidence to convict the defendant, we order that the judgment be reversed, that the finding be set aside, and that judgment be entered for the defendant.

*So ordered.*