COMMONWEALTH *vs.* PETER CENSULLO.

No. 94-P-1521.

Essex. September 21, 1995. - February 20, 1996.

Present: DREBEN, GREENBERG, & LENK, JJ.

*Search and Seizure,* Threshold police inquiry, Automobile. *Threshold Police Inquiry. Constitutional Law,* Search and seizure.

A police officer's good faith but erroneous belief that the defendant was operating a motor vehicle in the wrong direction on a one-way street rendered the stop unlawful where the officer had failed to inform himself of the traffic pattern and required the exclusion, under the Fourth Amendment to the United States Constitution, of evidence obtained as a result of the stop. [67-70]

COMPLAINT received and sworn to in the Peabody Division of the District Court Department on February 27, 1992.

On transfer to the jury session of that court, a pretrial motion to suppress evidence was heard by *Robert E. Hayes,* J., and the case was heard by him.

*Timothy A. Maciejowski* for the defendant.

*Margaret J. Perry,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Lieutenant John A. McCorry, an eighteen-year veteran of the Peabody police, while on routine patrol at 11:10 P.M. on February 26, 1992, noticed a brown car stopped at a red signal light on Prospect Street at its intersection with Route 114, a principal access route to the city. Behind the wheel of the car was the defendant waiting for the light to change. McCorry, who was driving a marked cruiser easterly on Route 114, took a sharp right at the intersection and drove past the defendant's car which stood at the intersection signal light. He motioned the defendant to remain stationary, pulled across the median, and came to a stop just behind him. As described, that portion of Prospect Street was a two-way

street. A 1987 city ordinance designated the rest of the street as one way (southerly) just beyond the intersection of Emery Street. What caused McCorry to act was his mistaken belief that Prospect Street was one way straight to the intersection of Route 114 and that the defendant was driving the wrong way. No signs to that effect were posted at or near the signal light, and residents of Emery Street (the defendant was one) had access to Route 114 because of the short northerly lane leading to the intersection.

As a result of observations made by McCorry after the stop, the defendant was charged with operating a motor vehicle under the influence of intoxicating liquor (G. L. c. 90, § 24); not being in possession of his motor vehicle driver's license (G. L. c. 90, § 11); and a one-way street violation (G. L. c. 89, § 9). He moved at a jury-of-six session in the District Court to suppress all observations made of him and information obtained as a result of the stop. The defendant's motion failed, and after trial he was convicted of the charges involving drunk driving and operating without a license in his possession.[1]

The defendant appeals the refusal to suppress information and observations garnered from the stop. The motion judge ruled that the officer's mistake was based upon a good faith belief that the defendant had violated G. L. c. 89, § 9. We hold that this was error, which infects the convictions.

Other pertinent facts as reconstructed from the verbal findings of the judge who acted on the motion to suppress place the issue in context. Although McCorry was familiar with the area in question (he was the shift commander), he had not informed himself of a 1987 city ordinance that permitted residents of Emery Street to "make a left turn onto that [Prospect] street" and believed the entire length of the street was one way. He was aware that there was a working traffic signal light controlling vehicles traveling north on Prospect Street, but believed it was just left over "in case someone did go down [the] one-way street." Although the testimony undisputedly established that the ordinance did, in fact, retain that portion of Prospect Street on which the defendant drove as a two-way street, for purposes of our analysis, we accept the

---

[1]Pursuant to G. L. c. 90C, § 3, the judge separately found the defendant "not responsible" for failing to comply with the "one-way street" designation.

judge's over-all determination that the officer acted in good faith in stopping the defendant.[2]

The defendant rightfully questions the legality of the officer's investigatory stop. From the appearance of things at the intersection, there was no visible violation of the law. *Commonwealth* v. *Kimball*, 37 Mass. App. Ct. 604, 606 (1994). And unlike the situation described in *Commonwealth* v. *Owens*, 414 Mass. 595, 597 (1993), the officer had no other independent basis to arrest the defendant. In such cases, the exclusionary rule applies unless some violation of law or other suspicious conduct appears. Compare *Commonwealth* v. *Santana*, 420 Mass. 205, 207 (1995) (police may stop vehicle which is violating a motor vehicle law, here driving with defective equipment); *Commonwealth* v. *Figueroa*, 18 Mass. App. Ct. 967, 967 (1984) (speeding); *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 645, 649 (1993) (police may stop motorist for a defective license plate light). See also *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763 (1981), quoting from *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974); *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990); *Commonwealth* v. *Ciaramitaro*, 26 Mass. App. Ct. 110, 115 (1988) (discussing level of suspicion required).

Since the motion judge relied on McCorry's good faith to escape application of the exclusionary rule in this case, we must consider, as we did in *Commonwealth* v. *Hecox*, 35 Mass. App. Ct. 277, 282 (1993), whether McCorry's conduct comes within the ambit of *United States* v. *Leon*, 468 U.S.

---

[2]The defendant also questions the judge's finding that Lieutenant McCorry acted in good faith: "How can it be said that he thought Prospect Street was one way when he was unaware of the ordinance that, itself, changed Prospect Street's flow of traffic from two way to one way approximately five years prior to the stop of the defendant." The Commonwealth argues that this mere rhetorical question does not rise to the level of an appellate argument and should not be considered on appeal.

Although not argued in great detail, we find enough support in the brief to merit our consideration. Contrast *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 231-232 (1973) (error not argued nor mentioned in brief is deemed waived as blank assertions in motion are insufficient); *Commonwealth* v. *Klein*, 400 Mass. 309, 316 (1987) (mere list of errors does not merit appellate review). Additionally, the defendant submitted a copy of the ordinance in his record appendix. Contrast *Commonwealth* v. *Ciaramitaro*, 26 Mass. App. Ct. 110, 114 n.5 (1988) (one sentence conclusory assertion in brief does not constitute an appellate argument on the issue).

897 (1984).[3] In *Leon*, the Supreme Court held that drugs seized pursuant to an invalid search warrant, issued by a detached magistrate, were admissible since the police had seized the items in "good faith" reliance on the warrant; the exclusion of "inherently trustworthy tangible evidence" would prove too costly to the administration of the criminal justice system. Accordingly, the justices found the reasons for exclusion "marginal or nonexistent." *Id*. at 907-908, 922. In a later case, the "good faith" exception was expanded to allow admission of evidence seized under the authority of a statute later found unconstitutional. See *Illinois* v. *Krull*, 480 U.S. 340 (1987).

In *Hecox*, we did not think the "good faith" exception to the exclusionary rule of the Fourth Amendment to the United States Constitution applied where police themselves relied upon mistaken and outdated police information that the defendant was wanted in connection with an outstanding warrant, stopped the defendant, and found him in possession of cocaine. We distinguished *Leon*, noting that "*Leon* did not allow law enforcement authorities to rely on an error of their own making." *Id*. at 282. We explained that "the interest in deterring unlawful police conduct, which is the foundation of the exclusionary rule, is not implicated where the police rely on the erroneous finding of a neutral judge or magistrate. In [*Leon*] there [was] no police illegality or misconduct to deter." *Id*. at 283. But we thought that " 'police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected' or at fault in not informing themselves." *Id*. at 284, quoting from 2 LaFave, Search & Seizure § 3.5 (d), at 21-22 (2d ed. 1987).

The United States Supreme Court has applied the "good faith" exception where court personnel were responsible for a mistaken entry on the police computer indicating an outstanding warrant upon which police relied, *Arizona* v. *Evans*, 115 S. Ct. 1185, 1193-1194 (1995); the court, however, declined to address the question whether the evidence should be suppressed if police personnel were responsible for the entry. *Id*. at 1194 n.5.

---

[3]In the companion case of *Massachusetts* v. *Sheppard*, 468 U.S. 981 (1984), the court stated "the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid."

The defendant's suppression motion does raise the issue of whether art. 14 of our Declaration of Rights grants greater liberty to the individual than the Fourth Amendment of the Federal Constitution as construed in *Leon*. The Supreme Judicial Court has not recognized a "good faith" exception to the exclusionary rule under State law but, in other contexts has stated that "the mere fact that an unlawful search and seizure has occurred should not automatically result in the exclusion of any illegally seized evidence." *Commonwealth* v. *Gomes*, 408 Mass. 43, 46 (1990). In determining whether to exclude the evidence the court will examine "(1) the degree to which the violation undermined the principles underlying the governing rule of law . . . and (2) the extent to which exclusion will tend to deter such violations from being repeated in the future. . . ." *Ibid.* In *Gomes*, the court held that a violation of the "knock and announce" rule required suppression. See *Commonwealth* v. *Grimshaw*, 413 Mass. 73, 77 (1992) ("Generally, evidence seized in violation of the law will be suppressed only if the violation is substantial or rises to the level of a Federal or State constitutional violation"). Cf. *Commonwealth* v. *Beldotti*, 409 Mass. 553, 559 (1991) (testing results of occult blood from murder suspect's hands and arms based on invalid warrant not subject to exclusion in view of minimal intrusion and likelihood of inevitable discovery).

Set against this roundup of the decisions, the facts at bar require the exclusion of the evidence obtained as a result of the stop. The holding in both *Sheppard* and *Leon* is limited to searches with a warrant. See *United States* v. *Whiting*, 781 F.2d 692 (9th Cir. 1986) (summarily rejecting the government's efforts to extend *Leon* to warrantless searches). Unlike the *Leon* situation where the magistrate who issued the warrant acts as a buffer to protect an individual's Fourth Amendment rights, here there is no safeguard. Contrary to *Evans*, the mistaken stop of the defendant was not that of court personnel, but the officer's alone. Contrast *Arizona* v. *Evans*, 115 S. Ct. at 1193-1194. As a senior officer charged with, among other things, enforcing traffic rules, McCorry's ignorance of the logistics at a major intersection on his patrol route does not inspire great confidence in law enforcement. The motion judge found that a working signal light controlled traffic traveling in the southerly lane and that Prospect Street at its juncture with Route 114 had always been a

two-way street. McCorry offered no other reason to stop the defendant. Extension of the good faith exception in these circumstances would create an exception which would swallow the exclusionary rule. Thus, the case for suppression is proved on Federal constitutional grounds, and we leave art. 14 for another day.

The judgments are reversed and the findings are set aside. The order denying the motion to suppress is vacated and a new order is to enter suppressing evidence obtained as a result of the stop.

*So ordered.*