NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1532                                              Appeals Court

COMMONWEALTH  vs.  BRIAN MAINGRETTE.

No. 13-P-1532.

Suffolk.     June 3, 2014. - December 3, 2014.

Present:  Cypher, Brown, & Agnes, JJ.

Search and Seizure, Fruits of illegal arrest.  Practice,
    Criminal, Warrant.  Evidence, Result of illegal arrest.
    Constitutional Law, Search and seizure, Arrest.  Police,
    Unlawful arrest.  Arrest.  Firearms.  Receiving Stolen
    Goods.

Complaint received and sworn to in the West Roxbury
Division of the Boston Municipal Court Department on September
11, 2012.

A pretrial motion to suppress evidence was heard by
Kathleen E. Coffey, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Barbara A. Lenk, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.

Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.
Winston D. Kendall for the defendant.

CYPHER, J.  The defendant, Brian Maingrette, was charged with carrying a firearm without a license, unlawful possession of ammunition, carrying a loaded firearm without a license, and receiving stolen property, after he was stopped, and subsequently arrested, on an outstanding warrant.  He filed a motion to suppress, arguing that his arrest was invalid because the warrant on which it was based had been recalled and, therefore, the incriminating items found in the trunk of his motor vehicle that were the basis for the pending charges must be suppressed.  After a hearing, a judge of the Boston Municipal Court allowed the motion.  The Commonwealth sought leave from a single justice of the Supreme Judicial Court to pursue an interlocutory appeal of that ruling.  The single justice allowed the Commonwealth's application and directed the appeal to the Appeals Court.

Motion hearing.  Boston police Officer John Burrows was the only witness to testify at the suppression hearing.  Because the motion judge's findings are soundly based on Burrows's testimony and are not in dispute, we quote from them here.

> "On September 10, 2012, officers assigned to the Youth Violence Task Force received information from a superior officer within the Boston [p]olice department that the defendant had been involved in a domestic incident the night before and he had brandished a gun.  The defendant was known to the officers of the Youth Violence Task Force due to prior criminal investigations.

"Officer Burrows checked the warrant management system at 1:00 P.M. on September 10th and learned that the defendant had failed to appear that same morning in Middlesex Superior Court on a charge of armed assault with intent to murder.  A default warrant had issued for his arrest.  The officer printed a copy of the warrant.

"Officer Burrows and fellow officers went to an address where the defendant's mother resides and where the defendant was known to frequent.  The defendant was not located.  They then traveled to 150 Edgemere Road, apartment 11, in West Roxbury.  This was the address listed on the defendant's driver's license.  At approximately 2:40 P.M., the police arrived at the targeted apartment and knocked on the door.  No one answered.  Two detectives set up a surveillance of the apartment from an unmarked police vehicle.  Officer Burrows left the area and returned to the police headquarters for the Youth Violence Task Force unit in Dorchester.

"At about 4:15 P.M., the defendant was observed by the detectives driving a silver Acura [automobile] on Edgemere Road.  Police observed him park his vehicle, exit[,] and enter the targeted apartment.  Officer Burrows was notified of the presence of the defendant and he returned from headquarters to 150 Edgemere Road with other members of his unit.  Their purpose was to arrest the defendant on the warrant that they believed was still outstanding."

We pause in our recitation of the judge's findings to note that Officer Burrows, who was the sole witness at the hearing and whose testimony is not disputed (see Commonwealth v. Isaiah I., 448 Mass. 334, 337-338 [2007], S.C., 450 Mass. 818, 819-821 & n.4 [2008]), testified in addition that by 4:30 P.M. at least seven officers had returned to the area and were "just waiting for transmissions" from the two detectives who had remained behind and were still watching the residence.  Each officer had

access to the warrant management system (WMS)[1] through a computer in each of the police vehicles in which they were traveling. The judge's written findings of fact continue as follows.

> "At 5:00 P.M., the defendant left his home, entered his vehicle and began driving on Edgemere Road. Police blocked the vehicle and ordered the defendant to exit with his hands shown. The defendant did not obey the order. Police approached him with their guns drawn. The defendant eventually complied . . . . He was placed under arrest.

> "When police searched the trunk of his vehicle, they found a loaded firearm wrapped in a towel. Two [iP]hones and $940 . . . were found in the glove compartment.

> "During the booking procedure at the police station, officers found a default removal form on the defendant's person. The form revealed that the defendant had reported to Middlesex Superior Court that afternoon. The default warrant had been recalled at 3:00 P.M. and the defendant was no longer on default status.[2] When police asked the defendant why he had not informed police of the recalled warrant, he told them they had never asked him."

In addition to the evidence summarized in these findings, a 1995 Boston police policy (special order number 95-31) was admitted in evidence. This policy in pertinent part states,

---

[1] The warrant management system (WMS) was signed into law on December 28, 1994, and established a computer system in which court personnel are required to enter active warrants and to remove warrants that have been satisfied or recalled. See G. L. c. 276, § 23A, as appearing in St. 1994, c. 247, § 3. The information is transferred to the criminal justice information system (CJIS), which is maintained by the criminal history systems board (CHSB) and thus available to all law enforcement agencies and the Registry of Motor Vehicles.

[2] A document printed from the computerized data base (CJIS) was admitted in evidence which reflects that the warrant was recalled on September 10, 2012, at 14:54 (2:54 P.M.), and that document apparently would have been visible to anyone who ran a warrant check after the recall was entered in the system.

"Immediately prior to arresting a person for an outstanding warrant, officers shall notify Operations so that the computerized Warrant Management System can be checked to determine if the outstanding warrant is still active . . . ."

Based on this evidence, the motion judge ruled that the two detectives who were conducting stationary surveillance of the defendant's apartment for more than two hours; Officer Burrows, who had returned to headquarters; and the other officers who were part of the team and equipped with computers had ample time and opportunity to check the status of the defendant's default warrant before arresting him. The motion judge concluded that their failure to do so, in violation of the police department's own policy, rendered the ensuing stop and search of his vehicle unlawful and in violation of the defendant's constitutional rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.

Discussion. On appeal, the Commonwealth does not dispute that had the officers checked the WMS in the minutes immediately preceding the defendant's arrest, they would have discovered that the arrest warrant was no longer valid. Nor is there any dispute that, absent the warrant, there is no independent basis for the arrest. The Commonwealth contends, however, that the police reliance upon information obtained from the WMS about

four hours before the arrest was reasonable.  The Commonwealth argues that, based on the officers' experience, there was no good reason for the officers to suspect that the defendant had cleared the warrant after 1:00 P.M. and the defendant did not inform the officer of the recall when stopped and placed under arrest.  Because the "delay in obtaining the updated information was reasonable," and art. 14 "is not violated by reasonable mistakes of fact," Commonwealth v. Porter P., 456 Mass. 254, 270 (2010), the Commonwealth argues, probable cause existed at the time of arrest and exclusion is not an appropriate remedy.

In reviewing a judge's ruling on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.'"  Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002).

Several Massachusetts appellate cases shed light on the appropriate analysis to be applied when reliance by a police officer on mistaken information to justify a search or seizure, as here, is the officer's responsibility alone.  First, in Commonwealth v. Hecox, 35 Mass. App. Ct. 277 (1993), we reversed a defendant's conviction of trafficking in cocaine where a police officer mistakenly believed that an arrest warrant for the defendant was outstanding -- even though it had been

rendered obsolete five days earlier -- because the officer either "did not check with his communications officer or he received incorrect data until the time he arrested the defendant." Id. at 281. Deciding the matter solely under Federal law, id. at 282, we held that, where police have "stale information or outmoded records that are demonstrably incorrect, the government has the burden of showing that it is not at fault in failing to update its records or to provide correct information." Id. at 284. Because the Commonwealth failed to meet this burden, we concluded that the defendant's motion to suppress evidence should have been allowed. Id. at 285. This court stated in Hecox, "'[T]he police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected' or at fault in not informing themselves." Id. at 284, quoting from 2 LaFave, Search and Seizure § 3.5(d), at 21-22 (2d ed. 1987).

Similarly, in Commonwealth v. Censullo, 40 Mass. App. Ct. 65, 69-70 (1996), we concluded that the exclusionary rule required suppression of evidence on Federal constitutional grounds when an officer's ignorance of traffic logistics at an intersection on his patrol route resulted in the defendant's arrest. Rejecting the Commonwealth's contention that the officer's mistake ought to be excused because he was acting in good faith, an exception to the exclusionary rule Massachusetts

has not adopted,[3] we instead balanced whether the violation was substantial and prejudicial and the extent to which exclusion would deter future violations and concluded the evidence obtained as a result of the stop must be suppressed. Id. at 67-70.

Recently, in Commonwealth v. Hernandez, 456 Mass. 528, 528-530 (2010), the Supreme Judicial Court ruled that heroin and cocaine seized by Boston University police officers during a motor vehicle stop outside of their jurisdiction was properly suppressed. Because the arrest was made without statutory or common-law authority, the court viewed it as an invalid exercise of official power "closely associated with the constitutional right to be free from unreasonable searches and seizures," id.

---

[3] In United States v. Leon, 468 U.S. 897, 918-921 (1984), the United States Supreme Court adopted the "good faith" exception to the exclusionary rule where the officer conducting a search objectively reasonably relied on a search warrant issued by a neutral magistrate that was subsequently determined to be invalid and in violation of the Fourth Amendment to the United States Constitution. Massachusetts has not adopted the "good faith" exception for purposes of art. 14 of the Massachusetts Declaration of Rights or statutory violations, focusing instead on whether the violations are substantial and prejudicial and whether exclusion will deter future police misconduct. See, e.g., Commonwealth v. Sheppard, 394 Mass. 381, 391 (1985) (holding that deficiency as to particularity in warrant not prejudicial under art. 14 where search was conducted as if warrant were in compliance with that requirement and, thus, search was not unreasonable); Commonwealth v. Treadwell, 402 Mass. 355, 356 n.3 (1988); Commonwealth v. Pellegrini, 405 Mass. 86, 91 n.6 (1989); Commonwealth v. Beldotti, 409 Mass. 553, 559 (1991) (minimal violation did not warrant exclusion of evidence obtained).

at 532, quoting from Commonwealth v. LeBlanc, 407 Mass. 70, 75 (1990), and thus the items seized were subject to the exclusionary rule. Commonwealth v. Hernandez, supra at 532-533. See Commonwealth v. Hampton, 457 Mass. 152, 155 (2010) (exclusionary rule applies to intentional deprivation of statutory right to use telephone). The violation was exacerbated because the extraterritorial arrest contravened State regulations and the Boston University police department's policy manual incorporating those regulations. Commonwealth v. Hernandez, supra at 533. Again, bypassing the contention that the evidence should not be excluded because the mistake was made in "good faith," the court weighed the fact that the arrest without authority was a substantial violation, the "plain[] prejudice" resulting from the discovery of the contraband, and the likelihood that exclusion would deter the abuse of official power, and concluded that exclusion of the evidence was an appropriate remedy. Id. at 532-533.

Even more recently, in Commonwealth v. Lobo, 82 Mass. App. Ct. 803, 808-810 (2012), we concluded that despite changes in the law that rendered a police officer's order to the driver and passengers to exit a stopped vehicle based upon the detection of odor of "freshly burnt marijuana" unjustified, the constitutional violation was not "so substantial and prejudicial" in the circumstances of the case as to warrant

exclusion under art. 14 of the evidence seized, because in the circumstances present in the case there was no causal relationship between the order and the defendant's ensuing arrest on outstanding warrants, and the discovery of the evidence was inevitable.

In these cases deciding whether the application of the exclusionary rule was warranted, the foundational purpose of the rule -- to deter unlawful police conduct, see, e.g., Commonwealth v. Wilkerson, 436 Mass. 137, 142 (2002) -- is used as a guiding principle.  In cases where an arrest is wrongly made on the basis of mistaken information chargeable solely to the police, the burden is on the government to show that it was not at fault in the circumstances, see Commonwealth v. Hecox, 35 Mass. App. Ct. at 284-285 (violation of Fourth Amendment), in other words, that the mistake was reasonable in the circumstances, and that the violation was minor or insubstantial and nonprejudicial and that exclusion of the evidence would not be likely to deter future police misconduct.[4,5]  See Commonwealth

---

[4] We note that, because these decisions involve police conduct where the underlying warrant or basis for the arrest has been deemed invalid, the requirement in these decisions that the government bear the burden of showing the mistake was reasonable comports with our requirement that where a search and arrest were made without a warrant, "the Commonwealth bears the burden of establishing that the actions of the police met constitutional standards."  Commonwealth v. Chown, 459 Mass. 756, 763 (2011), quoting from Commonwealth v. Santaliz, 413 Mass. 238, 240 (1992).

v. Sheppard, 394 Mass. 381, 389-391 (1985) (substantial and prejudicial requirement applied to State statutory and constitutional violations); Commonwealth v. Hernandez, 456 Mass. at 532-533 (substantial violation and prejudice found warranting application of exclusionary rule to statutory violation analogous to constitutional deprivation); Commonwealth v. Censullo, 40 Mass. App. Ct. at 67-70 (suppression of evidence on

---

[5] We note that in 2009, the United States Supreme Court discussed the applicability under the Fourth Amendment of the exclusionary rule to police mistakes. In Herring v. United States, 555 U.S. 135, 136-138 (2009) (Herring), upon an initial inquiry from a police officer, a clerk in a neighboring county reported that there was an outstanding warrant for the defendant. Within ten to fifteen minutes, however, the clerk discovered that the warrant had been recalled and notified the officer who had called, but by that time the defendant had already been arrested. The mistake was a police housekeeping error by the neighboring department, which had failed to update computer data to reflect that the arrest warrant had been recalled. The Court ruled that contraband seized from the defendant during the arrest need not be suppressed because the error was the result of negligence "rather than systemic error or reckless disregard of constitutional requirements, [and] any marginal deterrence does not 'pay its way.'" Id. at 147-148.

Under the standard in Herring, it appears that the exclusionary rule would still apply to the case at bar because here the sole source of the error, unlike the situation in Herring, was the failure of the police officers making the arrest to comply with an almost twenty year old department policy requiring them to check the WMS before making that arrest. Even the Court in Herring made clear that it was not suggesting that "all recordkeeping errors by the police are immune from the exclusionary rule." Id. at 146. In any case, of course, the Commonwealth may provide our citizens with greater protection under the State constitution than that afforded at the Federal level. See, e.g., Jenkins v. Chief Justice of the Dist. Ct. Dept., 416 Mass. 221, 229 n.16 (1993); Commonwealth v. Gonsalves, 429 Mass. 658, 662-663, 667-668 (1999).

Federal constitutional grounds where stop not justified, violation substantial [officer had no legal or independent basis for stop], and exclusion will deter future violations [error was police officer's]); Commonwealth v. Lobo, 82 Mass. App. Ct. at 808-810 (substantial and prejudicial requirement applied to art. 14 violation).  See also Commonwealth v. Beldotti, 409 Mass. 553, 559 (1991) (testing results of occult blood from murder suspect's hands and arms based on invalid warrant not subject to exclusion in view of minimal intrusion and likelihood of inevitable discovery).

Applying this analysis to the case at bar, the result is dictated by the circumstances preceding the arrest and the Boston police department policy.[6]  Specifically, the evidence shows that at various intervals during the afternoon in question there were up to nine police officers working together to locate and arrest the defendant.  The assignment did not include responding to an ongoing crime in which the defendant was engaged, but rather consisted primarily of surveillance intended to locate him.  Each officer in the team had access to a computer that could be used to instantly access the WMS.  Added

---

[6] Since an administrative policy or "standards" or guidelines alone do not have the force of law, see Rubera v. Commonwealth, 371 Mass. 177, 186 (1976); see also United States v. Hensel, 699 F.2d 18, 29-30 (1st Cir. 1983) (Breyer, J.), citing United States v. Caceres, 440 U.S. 741, 755 (1979), such a violation does not automatically require an application of the exclusionary rule and the suppression of evidence.

to this was testimony that between 3:00 P.M. and 5:00 P.M. two detectives remained in the neighborhood solely for the purpose of "watching [the defendant's] residence." When they saw the defendant return at 4:15 P.M., the detectives summonsed the other officers, including Burrows, back to the area. Burrows testified that after their arrival, "[n]othing" was happening: "We were just waiting for transmissions from the detectives watching the residence" (emphasis added). About thirty minutes later, around 5:00 P.M., the detectives alerted Burrows and the other officers that the defendant was driving away from the apartment building, and he was stopped shortly thereafter. Given these facts, it is difficult to conclude that the police had neither the time nor the opportunity to check the WMS to confirm that the arrest warrant was still active.

This failure contravened the clear policy mandate of the Boston police department, set out in special order number 95-31, dated June 2, 1995, that "[i]mmediately prior to arresting a person for an outstanding warrant officers shall notify Operations so that the computerized Warrant Management System can be checked to determine if the outstanding warrant is still active . . . ."[7] As the motion judge found, "[i]f the police had

---

[7] That police, indeed, routinely and expeditiously check the warrant management system during a stop or an arrest is perhaps most evident in those cases closely analogous to the case at bar, namely, where police run such a check and are informed

properly followed this mandate, they would have learned that the defendant was no longer on default and they were not legally authorized to stop him and search his vehicle."

That the police department has committed to writing, for apparently the past nineteen years, the obligation of its officers to check an arrest warrant <u>immediately</u> before making the arrest is significant in this analysis. It signals the department's certainty that each officer has both the ability and the technological tools to make such an inquiry. The requirement also impliedly acknowledges the rapidity with which information in the database can change and the importance of confirming such data before depriving an individual of his or

---

during the stop or the arrest that there is an active outstanding warrant, only to discover later that the warrant had been recalled, satisfied, or was otherwise invalid. See, e.g., <u>Commonwealth</u> v. <u>Wilkerson</u>, 436 Mass. 137, 139 (2002) (after stop, driver arrested for operating after suspended license; check of license revealed driver had valid license). See also <u>United States</u> v. <u>Mackey</u>, 387 F. Supp. 1121 (D. Nev. 1975) (check of hitchhiker's identification turned up warrant, later determined to have been satisfied; evidence seized suppressed); <u>Ott</u> v. <u>State</u>, 325 Md. 206, 209-211, 219, cert. denied, 506 U.S. 904 (1992) (computer check of individual seated in parked motor vehicle incorrectly showed active warrant that was actually no longer active, resulting in suppression of evidence obtained during arrest); <u>People</u> v. <u>Jennings</u>, 54 N.Y.2d 518, 520 (1981) (check during stop for traffic violations incorrectly turned up active warrant, when in fact it had been satisfied, invalidating arrest; evidence suppressed); <u>People</u> v. <u>McElhaney</u>, 146 Misc.2d 748 (N.Y. Sup. Ct. 1990) (license plate check of vehicle showed it was stolen, but stop of vehicle twenty minutes later invalidated when investigation showed police had failed to update records that car had been recovered and returned to owner; evidence suppressed).

her liberty. After all, the ease and speed with which a police officer may confirm the validity of an arrest warrant is an appropriate and easily executed buffer to protect the department from subsequent claims of wrongdoing, to say nothing of an individual's right to liberty.

In these circumstances, where the police had ample time and opportunity to comply with their own department's policy and failed to do so, we cannot view the subsequent arrest of the defendant on an invalid warrant as reasonable. See People v. Lent, 92 A.D.2d 941 (N.Y. 1983) (arrest made on basis of warrant that had been satisfied eight hours earlier invalid; evidence seized suppressed); State v. Trenidad, 23 Wash. App. 418 (1979) (because arrest warrant had been quashed some thirty minutes before arrest, court held arrest was invalid and suppressed evidence). See also, e.g., Jenkins v. Chief Justice of the Dist. Court Dept., 416 Mass. 221, 229-231 (1993) (describing well-known purpose for adoption of art. 14, and later Fourth Amendment, as prohibiting unchecked control over liberty of people by law enforcement officers through legal devices that were accountable to no person). Moreover, that the defendant was arrested without a warrant or probable cause was clearly a substantial violation and the discovery of the inculpatory evidence was plainly prejudicial.

The order allowing the motion to suppress the evidence is affirmed.[8]

So ordered.

---

[8] Because of the result we reach, we need not address the defendant's claim related to the propriety of the inventory search.

AGNES, J. (concurring).  I agree with the majority that the evidence seized from the trunk of the defendant's vehicle must be suppressed because the police violated an explicit departmental policy that requires them to check on the status of a warrant "[i]mmediately prior to" an arrest by contacting their operations center "so that the computerized Warrant Management System [WMS] can be checked to determine if the outstanding warrant is still active."  Ante at    , quoting from Boston police department special order number 95-31 (June 2, 1995).  I also agree with the majority that a rule of reasonableness must be applied, because in circumstances where the police have neither sufficient time nor the opportunity to verify that an arrest warrant is still outstanding, suppression of evidence may have no deterrent effect on future police misconduct.  I write separately because in my view, even apart from an explicit departmental policy such as the Boston police department policy involved in this case, the application of the exclusionary rule in a case such as this may turn on whether and when the police checked the WMS.[1]

---

[1] The statute creating the WMS, G. L. c. 276, § 23A, as amended through St. 2010, c. 256, § 123, reads, in its entirety, as follows:

> "Whenever a court is requested to issue a warrant, the requesting authority shall provide to the court the person's name, last known address, date of birth, gender, race, height, weight, hair and eye color, the offense or

offenses for which the warrant is requested, a designation of the offense or offenses as felonies or misdemeanors, any known aliases and any such information as shall be required for a warrant to be accepted by the criminal justice information system maintained by the department of criminal justice information services.  A warrant which contains the above information as provided by the individual for whom the warrant is being issued shall not be nullified if such information is later found to be inaccurate. An individual or law enforcement official seeking issuance of a warrant which does not contain all of the above required fields may apply to the clerk of the court for an exemption from this requirement.  Such exemption shall be automatically granted upon the request of any law enforcement official or agency. No rights regarding the validity of a warrant may arise from such requirements not being met.  Such information and the name of the police department responsible for serving the warrant shall be entered by the clerk's office into a computer system to be known as the warrant management system.  All warrants appearing in the warrant management system shall be accessible through the criminal justice information system, maintained by the department of criminal justice information services to law enforcement agencies and the registry of motor vehicles.  The warrant shall consist of sufficient information electronically appearing in the warrant management system, and a printout of the electronic warrant from the criminal justice information system shall constitute a true copy of the warrant.  Such warrants appearing electronically in the warrant management system and, in turn, in the criminal justice information system, shall constitute notice and delivery of said warrants to the police department responsible for serving the warrant.  Whenever a warrant is recalled or removed, the clerk's office shall, without any unnecessary delay, enter the same in the warrant management system which entry shall be electronically transmitted to the criminal justice information system.

"No law enforcement officer, who in the performance of his duties relies in good faith on the warrant appearing in the warrant management system and, in turn, the criminal justice information system, shall be liable in any criminal prosecution or civil action alleging false arrest, false imprisonment, or malicious prosecution or arrest by false pretense.

"The exclusionary rule is a remedy to an illegal search; its purpose is to deter police misconduct and preserve judicial integrity by dissociating courts from unlawful conduct." Commonwealth v. Nelson, 460 Mass. 564, 570-571 (2011). There are multiple sources of authority for the application of the exclusionary rule under Massachusetts law. In some circumstances, evidence obtained by the police in violation of the law must be excluded from use at trial based on the demands of art. 14 of the Massachusetts Declaration of Rights. See, e.g., Commonwealth v. Ford, 394 Mass. 421, 426-427 (1985) (warrantless storage search of trunk of automobile conducted without consent, probable cause, or exigent circumstances and not conducted pursuant to standard procedures established by the police department). See also Commonwealth v. Lora, 451 Mass. 425, 438-440 (2008) (exclusionary rule applicable to evidence seized after traffic stop based on racial profiling in violation of constitutional right to equal protection of laws). In other

---

"The issuing court shall provide notification, either before the issuance of a default or arrest warrant or no later than 30 days after the issuance of the warrant, to the subject of the warrant. Such notice shall contain the following information: the name and address of the issuing court, a description of the charge for which the warrant is being issued, a description of the method by which the individual may clear the warrant and a summary of the consequences the individual may face for not responding to the warrant. Such notice shall be deemed satisfactory if notice is mailed to the address stated on the warrant."

cases, the Supreme Judicial Court has stated that "the application of the exclusionary rule is appropriate where it is 'inherent in the purpose of a statute which the government has violated,' and that such a purpose is inherent in 'statutes closely associated with constitutional rights.'"  Commonwealth v. Hernandez, 456 Mass. 528, 532 (2010), quoting from Commonwealth v. LeBlanc, 407 Mass. 70, 75 (1990).  See, e.g., Commonwealth v. Jones, 362 Mass. 497, 502-503 (1972) (evidence of identification made at police station after intentional refusal to grant defendant his statutory right, under G. L. c. 276, § 33A, to use telephone was suppressed); Commonwealth v. Upton, 394 Mass. 363, 366-369 (1985) (G. L. c. 276, § 2B, governing affidavits in support of applications for search warrants, requires exclusion of evidence seized pursuant to search warrant issued without showing of probable cause in application); Commonwealth v. White, 469 Mass. 96, 99-103 (2014) (under G. L. c. 276, § 1, police are authorized to conduct a search incident to arrest "only (1) for the purpose of seizing evidence of the crime for which the arrest has been made in order to prevent its destruction or concealment or (2) for the purpose of removing any weapon the person arrested might use to resist arrest or to escape"; evidence seized exceeding lawful scope of search incident to arrest suppressed).  Further, the Supreme Judicial Court recognizes that in some cases it is

appropriate to apply the exclusionary rule to suppress evidence based on the common law.  See Commonwealth v. Scalise, 387 Mass. 413, 417 (1982) (evidence seized pursuant to search warrant supported by probable cause must be suppressed as matter of common-law rule forbidding police officers from making unannounced entry in absence of limited circumstances permitting exception to knock and announce rule).

The WMS replaced a centuries-old system, in which the existence of an arrest or default warrant depended on whether an authentic paper warrant issued by a court could be located, with a new standard based on whether an entry exists in a statewide electronic database.  The law enforcement community has embraced the WMS not only because it provides speedy access to warrant information around the clock, but also because it protects police officers who rely on it from the risk of criminal prosecution or civil liability from "false arrest, false imprisonment, or malicious prosecution or arrest by false pretense."  G. L. c. 276, § 23A.  See note 1, supra.  I take judicial notice of the fact that electronic inquiries into WMS are made by the police and other law enforcement officers and agencies hundreds, if not thousands, of times each day when motor vehicles are stopped, when suspicious persons are encountered on the street, when persons are arrested, and in aid of investigations.  Also, the WMS must be consulted by police

officers, sheriffs, judges, and court personnel before a person is released from custody.  See G. L. c. 276, § 29.  The existence of the WMS and the ease with which it may be accessed not only safeguards police officers, but also ensures that the liberty of individuals is not unlawfully infringed, and protects the public from the risk of injury or death from persons who otherwise might be released from custody despite outstanding warrants for serious crimes.  Because the use of the WMS by the police is so frequent and extensive, in my opinion, when an arrest is made pursuant to a warrant that turns out to have been recalled, as in this case, and the police have failed to verify within a reasonable time before the arrest whether the warrant is outstanding (assuming that the police have both access to and an opportunity to conduct such verification), the failure to determine that the warrant no longer exists is not reasonable, and the evidence obtained as a result of the arrest should be suppressed.  See Commonwealth v. Upton, 394 Mass. at 367 n.4 ("development of exclusionary rules in light of statutory provisions is not uncommon in this Commonwealth").

How to define what is a reasonable time prior to an arrest within which the police must check the WMS is not a question that need be answered here, as the determination may vary depending on circumstances.  Nor need we decide whether checking the system at 1:00 P.M. prior to an arrest at approximately 5:00

<u>P</u>.<u>M</u>. that same day was in itself reasonable or unreasonable, because the Boston police special order requiring that the police check the WMS "[i]mmediately prior" to an arrest provides a clear answer to that question in this case.